**United States District Court**
**District of Connecticut**
**FILED AT    HARTFORD**

_9/12/2018_____20
Robin, D. Tabora, Clerk
By_____
Deputy Clerk

**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

---

*Connecticut Financial Center*          *(203)821-3700*
*157 Church Street, 25th Floor*         *Fax (203) 773-5376*
*New Haven, Connecticut 06510*          *www.justice.gov/usao/ct*

September 12, 2018

Vadim A. Glozman
Attorney at Law
53 W. Jackson Blvd., Ste. 1410
Chicago, Illinois 60604

    Re:    *United States v. Peter Yuryevich Levashov*
           Case No. 3:17cr83 (RNC)

Dear Attorney Glozman:

    This letter confirms the plea agreement between your client, Peter Yuryevich Levashov, aka "Petr Levashov," aka "Peter Severa," aka "Petr Severa," aka "Sergey Astakhov" (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government") in this criminal matter.

## THE PLEA AND OFFENSE

    In consideration for the benefits offered under this agreement, Peter Yuryevich Levashov agrees to plead guilty to Count One (charging him with intentional damage to a protected computer, in violation of 18 U.S.C. §§ 1030(a)(5)(A) and (c)(4)(B), and 2), Count Two (charging him with conspiracy, in violation of 18 U.S.C. § 371), Count Four (charging him with wire fraud, in violation of 18 U.S.C. §§ 1343 and 2), and Count Eight (charging him with aggravated identity theft, in violation of 18 U.S.C. §§ 1028A and 2) of the Indictment.

    The defendant understands that, to be guilty of each of these offenses, the following essential elements must be satisfied:

## COUNT ONE

    1.    The defendant knowingly caused the transmission of a program, information, code, and command;

    2.    As a result of such conduct, the defendant intentionally caused damage to a protected computer without authorization; and

*Vadim Glozman, Esq.*
*September 12, 2018*
*Page 2*

    3.    The damage affected 10 or more protected computers during any one-year period and the loss to one or more persons during any one-year period from the defendant's course of conduct affecting protected computers aggregated to at least $5,000 in value.

## COUNT TWO

    1.    That on or about the dates charged in the Indictment, a conspiracy (that is, an agreement) existed to commit intentional damage to a protected computer, accessing protected computers in furtherance of fraud, and threatening to damage a protected computer;

    2.    That the defendant knowingly and intentionally became a member of that conspiracy;

    3.    That one of the members of the conspiracy knowingly committed at least one of the overt acts charged in the Indictment; and

    4.    That one or more of the overt acts were committed to further some objective of the conspiracy.

## COUNT FOUR

    1.    There was a scheme or artifice to defraud or to obtain money or property by materially false and fraudulent pretenses, representations, and promises, as alleged in the Indictment;

    2.    The defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud; and

    3.    In execution of that scheme, the defendant used or caused the use of a wire communication in the interstate or foreign commerce as charged in the Indictment.

## COUNT EIGHT

    1.    On or about the date charged in the Indictment, the defendant knowingly transferred, possessed, and used a means of identification of another person;

    2.    The defendant did so without lawful authority; and

    3.    The defendant did so during and in relation to the felony violation of 18 U.S.C. § 1030(a)(5)(A) as charged in Count One and the felony violation of 18 U.S.C. § 1343 charged in Count Four.

*Vadim Glozman, Esq.*
*September 12, 2018*
*Page 3*

## THE PENALTIES

### Count One

#### Imprisonment

Count One carries a maximum penalty of 10 years of imprisonment.

#### Supervised Release

In addition, the Court may impose a term of supervised release of not more than three years to begin after any term of imprisonment. 18 U.S.C. § 3583.

The defendant understands that, should he violate any condition of supervised release, he may be required to serve a further term of imprisonment of up to two years per violation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

### Count Two

#### Imprisonment

Count Two carries a maximum penalty of 5 years of imprisonment.

#### Supervised Release

In addition, the Court may impose a term of supervised release of not more than three years to begin after any term of imprisonment. 18 U.S.C. § 3583.

The defendant understands that, should he violate any condition of supervised release, he may be required to serve a further term of imprisonment of up to two years per violation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

### Count Four

#### Imprisonment

Count Four carries a maximum penalty of 20 years of imprisonment.

#### Supervised Release

In addition, the Court may impose a term of supervised release of not more than three years to begin after any term of imprisonment. 18 U.S.C. § 3583.

*Vadim Glozman, Esq.*
*September 12, 2018*
*Page 4*

The defendant understands that, should he violate any condition of supervised release, he may be required to serve a further term of imprisonment of up to two years per violation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

## Count Eight

### Imprisonment

Count Eight carries a mandatory term of imprisonment of two years, which must be imposed to run consecutively to any other term of incarceration which has been or is imposed.  18 U.S.C. § 1028A(b).

### Supervised Release

In addition, the Court may impose a term of supervised release of not more than one year to begin after any term of imprisonment. 18 U.S.C. § 3583.

The defendant understands that, should he violate any condition of supervised release, he may be required to serve a further term of imprisonment of up to one year per violation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

## Counts One, Two, Four, and Eight

### Supervised Release

The Court must order the supervised release periods to run concurrently.  Hence, the defendant understands that the Court can only impose a maximum total effective term of supervised release is 3 years.

### Fines

These offenses carry a maximum fine of $250,000.  The defendant is also subject to the alternative fine provision of 18 U.S.C. § 3571.  Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; or (3) $250,000.

### Special Assessment

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on each count of conviction, which in this case totals $400.  The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted.

*Vadim Glozman, Esq.*
*September 12, 2018*
*Page 5*

<u>Restitution</u>

In addition to the other penalties provided by law, the Court must also order that the defendant make restitution under 18 U.S.C. § 3663A, and the Government reserves its right to seek restitution on behalf of victims consistent with the provisions of § 3663A. The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution. Restitution is payable immediately unless otherwise ordered by the Court.

<u>Interest, penalties and fines</u>

Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine or restitution not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C. § 3572(h), (*i*) and § 3612(g).

<u>Forfeiture</u>

Pursuant to 18 U.S.C. § 1030(*i*), 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c), and based on his commission of the illegal acts of Count One (charging him with intentional damage to a protected computer, in violation of 18 U.S.C. §§ 1030(a)(5)(A) and (c)(4)(B), and 2), Count Two (charging him with conspiracy, in violation of 18 U.S.C. § 371), and Count Four (charging him with wire fraud, in violation of 18 U.S.C. §§ 1343 and 2), the defendant agrees to forfeit all interests in each of the following assets:

(1) WebMoney Account associated with WebMoney Identifier ending in 4986;

(2) The following items seized during a search executed at the time of the defendant's arrest from an apartment in Barcelona, Spain, on or about April 7, 2017:

      a.    One green with black-colored microchips solid-state drive, marked Samsung on one side and grey and black plastic on the other side, removed by FBI personnel in conjunction with the Spanish National Police ("SNP") from a black Sony laptop;

      b.    One black 128GB Transcend SDXC memory card removed by FBI personnel in conjunction with the SNP from a black Sony laptop;

      c.    One black Sony Xperia tablet with a cracked display and cracked back;

      d.    One red 8GB SD Ultra Card memory card (serial number 4I060L2TC0W0), removed from the black Sony Xperia tablet;

      e.    One black and silver Apple watch (serial number FHLPKUTXG9J8);

      f.    One silver Apple iPhone (IMEI number 356951064aa2936);

Vadim Glozman, Esq.
September 12, 2018
Page 6

        g.      One black Dell computer mouse (serial number G16004B9);

        h.      One white WiFi 4G device; and

        i.      One black 16GB Sony thumb drive with the marking "USM16W" on its face; and

(3)  A sum of money equal to the total amount of money, real or personal, which constitutes or is derived from proceeds traceable to Counts One, Two and Four.

The defendant acknowledges that the above-listed assets are subject to forfeiture as proceeds of illegal conduct and/or property facilitating illegal conduct giving rise to forfeiture. The defendant further warrants that he is the sole and true owner of the WebMoney account referenced herein.

The defendant further agrees that he shall not, directly or indirectly, sell, assign, transfer, convey, donate, convert, pledge, encumber, collateralize, liquidate, fail to conduct ordinary maintenance of, diminish the value of, or otherwise dispose of, the property listed above.

The defendant agrees to waive all interests in each of the assets listed above (hereinafter, the "forfeitable assets"), in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. The defendant agrees to consent to the entry of orders of forfeiture for each of the forfeitable assets, and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.  The defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise him of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time his guilty plea is accepted.

The defendant agrees to take all steps as requested by the United States to pass clear title to all of the forfeitable assets to the United States, to share truthful information with agents and representatives of the United States about any facts and claims concerning the assets, and to testify truthfully in any judicial forfeiture proceeding.

The defendant agrees to hold the United States, its agents and employees harmless from any claims whatsoever in connection with the seizure or forfeiture of the above-listed assets covered by this agreement.  The defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.  The defendant also understands and agrees that by virtue of his plea of guilty he waives any rights or cause of action to claim that he is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

*Vadim Glozman, Esq.*
*September 12, 2018*
*Page 7*

## THE SENTENCING GUIDELINES

### Applicability

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that he has no right to withdraw his guilty plea if his sentence or the Guideline application is other than he anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

### Acceptance of Responsibility

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, should the defendant qualify for a decrease under § 3E1.1(a) and his offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to § 3E1.1(b) which recommends that the Court reduce the defendant's Adjusted Offense Level by one additional level based on his prompt notification of his intention to enter a plea of guilty. The defendant understands that the Court is not obligated to accept the Government's recommendations on the reductions.

The above-listed recommendations are conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by (1) truthfully admitting the conduct comprising the offense(s) of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 of the Sentencing Guidelines, and (2) truthfully disclosing to the United States Attorney's Office and the United States Probation Office personal information requested, including the submission of a complete and truthful financial statement detailing the defendant's financial condition. The defendant expressly authorizes the United States Attorney's Office to obtain a credit report concerning the defendant.

In addition, the Government expressly reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant engages in any acts, unknown to the Government at the time of the signing of this agreement, which (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (§ 3E1.1 of the Sentencing Guidelines); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (§ 3C1.1 of the Sentencing Guidelines); or (3) constitute a violation of any condition of release. Moreover, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw his guilty plea or takes a position at sentencing, or otherwise, which, in the Government's assessment, is inconsistent with affirmative acceptance of personal responsibility. The defendant understands that he may not withdraw his plea of guilty

Vadim Glozman, Esq.
September 12, 2018
Page 8

if, for the reasons explained above, the Government does not make one or both of the recommendations or seeks denial of the adjustment for acceptance of responsibility.

Stipulation

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into the attached stipulation, which is a part of this plea agreement. The defendant understands that this stipulation does not set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing. The defendant understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

Guideline Partial Stipulation

The parties agree as follows:

The Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range. The counts of conviction are grouped together into a single Group pursuant to U.S.S.G. § 3D1.2(d).

The defendant's guideline calculation is as follows:

| | |
|---|---|
| Base offense level pursuant to U.S.S.G. § 2B1.1(a)(1) | 7 |
| Gain of more than $3,500,000 pursuant to U.S.S.G. § 2B1.1(b)(1)(J) and advisory note 3(B) | +18 |
| Ten or more victims pursuant to U.S.S.G § 2B1.1(b)(2)(A) | +2 |
| Section 1030(a)(5)(A) is crime of conviction pursuant to U.S.S.G. § 2B1.1(b)(18)(A)(ii) | +4 |
| Acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 | -3 |

The government further contends that the following enhancements apply:

| | |
|---|---|
| Substantial part of fraud committed outside U.S. and sophisticated means pursuant to U.S.S.G. § 2B1.1(b)(10)(B) and (C) | +2 |
| Use of a special skill that significantly facilitated the commission or concealment of the offenses pursuant to U.S.S.G. § 3B1.3 | +2 |

Loss or

V.G.

PL

Vadim Glozman, Esq.
September 12, 2018
Page 9

The defendant does not contest the factual basis for these enhancements, but reserves his right to argue and will argue that these enhancements are not legally applicable and would result in a greater than necessary sentence.

Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category I. The parties reserve the right to recalculate the defendant's Criminal History Category and corresponding sentencing ranges if this initial assessment proves inaccurate.

The defendant's guideline calculation (adjusted offense level of 28 assuming a Criminal History Category I) would result in a range of 78 to 97 months of imprisonment (sentencing table). In addition, the defendant has pleaded guilty to Count Eight, charging a violation of Title 18, United States Code, Section 1028A. *See* U.S.S.G. § 2B1.6. The penalty for this offense is 24 months to be imposed to run consecutively to any other term of imprisonment imposed. Hence, the fully adjusted range would be 102 to 121, and a fine range of $25,000 to $250,000, U.S.S.G. § 5E1.2(c)(3).

The government's guideline calculation (adjusted offense level of 32 assuming a Criminal History Category I) would result in a range of 121 to 151 months of imprisonment (sentencing table). In addition, the defendant has pleaded guilty to Count Eight, charging a violation of Title 18, United States Code, Section 1028A. *See* U.S.S.G. § 2B1.6. The penalty for this offense is 24 months to be imposed to run consecutively to any other term of imprisonment imposed. Hence, the fully adjusted range would be 145 to 175 months in prison and a fine range of $35,000 to $350,000, U.S.S.G. § 5E1.2(c)(3).

Under either calculation, the defendant is also subject to a supervised release term of one to three years. U.S.S.G. § 5D1.2. The defendant further expressly understands that the Court may not in any way reduce the term to be imposed on the other counts of conviction so as to compensate for, or otherwise take into account, any separate term of imprisonment imposed for the conviction under 18 U.S.C. § 1028A.

The Government and the defendant reserve their rights to seek a departure or a non-Guidelines sentence, and both sides reserve their right to object to a departure or a non-Guidelines sentence. Nor will either party suggest that the Probation Department consider a departure or adjustment not set forth herein, or suggest that the Court on its own consider a departure or adjustment not identified above.

The defendant understands that the Court is not bound by this agreement on the Guideline ranges specified above. The defendant further understands that he will not be permitted to withdraw the guilty plea if the Court imposes a sentence outside any of the ranges set forth in this agreement.

In the event the United States Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate

*Vadim Glozman, Esq.*
*September 12, 2018*
*Page 10*

calculations.  Moreover, the parties reserve the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

<u>Information to the Court</u>

The Government reserves its right to address the Court with respect to an appropriate sentence to be imposed in this case.  Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

**WAIVER OF RIGHTS**

The defendant acknowledges and agrees that he is knowingly, intelligently, and voluntarily waiving the following rights:

<u>Waiver of Trial Rights and Consequences of Guilty Plea</u>

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.

The defendant understands that he has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against him, the right not to be compelled to incriminate himself, the right to testify and present evidence, and the right to compel the attendance of witnesses to testify in his defense.  The defendant understands that by pleading guilty he waives those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if he pleads guilty, the Court may ask him questions about each offense to which he pleads guilty, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making false statements.

<u>Waiver of Statute of Limitations</u>

The defendant agrees that, should the conviction following defendant's guilty plea be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution.  The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

*Vadim Glozman, Esq.*
*September 12, 2018*
*Page 11*

### Waiver of Right to Challenge Conviction

The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction. By pleading guilty, the defendant waives his right to appeal or collaterally attack his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241. In addition to any other claims he might raise, the defendant waives his right to challenge his conviction based on (1) any non-jurisdictional defects in the proceedings before entry of this plea, (2) a claim that the statute(s) to which the defendant is pleading guilty is unconstitutional, and (3) a claim that the admitted conduct does not fall within the scope of the statute. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

### Waiver of Right to Appeal or Collaterally Attack Sentence

The defendant acknowledges that under certain circumstances, he is entitled to challenge his sentence. In consideration for the benefits offered under this agreement, the defendant agrees not to appeal or collaterally attack the sentence in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241 if that sentence does not exceed 175 months of imprisonment, a three-year term of supervised release, a $400 special assessment, $4 million fine, $1 million in restitution, or forfeiture of the assets described on page five above, even if the Court imposes such a sentence based on an analysis different from that specified above. The Government and the defendant agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with, in whole or in part, the undischarged portion of any other sentence that has been imposed on the defendant at the time of sentencing in this case. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

### Waiver of Challenge to Plea Based on Immigration Consequences

The defendant understands that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, non-citizens are subject to removal for a broad range of crimes, including the offense(s) to which the defendant is pleading guilty. Indeed, because the defendant is pleading guilty to computer and wire fraud charges, removal is presumptively mandatory. Likewise, if the defendant is a naturalized citizen of the United States, pleading guilty may result in denaturalization and removal. Removal, denaturalization, and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

The defendant understands that he is bound by his guilty plea regardless of the immigration consequences of the plea and regardless of any advice the defendant has received from his counsel

*Vadim Glozman, Esq.*
*September 12, 2018*
*Page 12*

or others regarding those consequences. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on those consequences, and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction or sentence, based on the immigration consequences of his guilty plea, conviction or sentence.

> ### Waiver of Right to Discovery

The defendant hereby acknowledges that he has accepted this agreement and decided to plead guilty because he is in fact guilty. By entering this plea of guilty, the defendant waives any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, Jencks Act material, exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, or impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this agreement.


*in other words, v.c. PL*

## ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA

The defendant acknowledges that he is entering into this agreement and is pleading guilty freely and voluntarily because he is guilty. The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the Government and him (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges his understanding of the nature of the offense to which he is pleading guilty, including the penalties provided by law. The defendant also acknowledges his complete satisfaction with the representation and advice received from his undersigned attorney. The defendant and his undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

The defendant acknowledges that he is not a "prevailing party" within the meaning of Public Law 105-119, section 617 ("the Hyde Amendment") with respect to the count of conviction or any other count or charge that may be dismissed pursuant to this agreement. The defendant voluntarily, knowingly, and intelligently waives any rights he may have to seek attorney's fees and other litigation expenses under the Hyde Amendment.

## SCOPE OF THE AGREEMENT

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to him with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving him.

*Vadim Glozman, Esq.*
*September 12, 2018*
*Page 13*

## COLLATERAL CONSEQUENCES

The defendant understands that he will be adjudicated guilty of each offense to which he has pleaded guilty and will be deprived of certain rights, such as the right to hold public office, to serve on a jury, to possess firearms and ammunition, and in some states, the right to vote. Further, the defendant understands that if he is not a citizen of the United States, a plea of guilty may result in removal from the United States, denial of citizenship, and denial of admission to the United States in the future. The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Federal Bureau of Prisons or the United States Probation Office will collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant understands that the Government reserves the right to notify any state or federal agency by which he is licensed, or with which he does business, as well as any current or future employer of the fact of his conviction.

## SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of his participation in the creation, distribution, and operation of the Kelihos botnet, which forms the basis of the Indictment in this case. After sentencing, the Government will move to dismiss the remaining counts of the indictment because the conduct underlying the dismissed counts will have been taken into account in determining the appropriate sentence.

The defendant understands that if, before sentencing, he violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, the defendant will not be permitted to withdraw his guilty plea.

*Vadim Glozman, Esq.*
*September 12, 2018*
*Page 14*

**NO OTHER PROMISES**

      The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

      This letter shall be presented to the Court, in open court, and filed in this case.

          Very truly yours,

JOHN H. DURHAM
UNITED STATES ATTORNEY

VANESSA RICHARDS
ASSISTANT UNITED STATES
ATTORNEY

DAVID T. HUANG
ASSISTANT UNITED STATES
ATTORNEY

ANTHONY TEELUCKSINGH
SENIOR COUNSEL
DEPARTMENT OF JUSTICE
COMPUTER CRIMES & INTELLECTUAL
PROPERTY SECTION

      The defendant certifies that he has read this plea agreement letter and its attachment(s) or has had it read or translated to him, that he has had ample time to discuss this agreement and its attachment(s) with counsel and that he fully understands and accepts its terms.

PETER YURYEVICH LEVASHOV
The Defendant

Date    9 - 12 - 18

      I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that he understands and accepts its terms.

VADIM GLOZMAN, ESQ.
Attorney for the Defendant

Date    9/12/18

## STIPULATION OF OFFENSE AND RELEVANT CONDUCT

The defendant and the Government stipulate to the following offense and relevant conduct that gives rise to the defendant's agreement to plead guilty to Counts One, Two, Four, and Eight of the Indictment:

Since the late 1990s until his arrest on April 7, 2017, the defendant Peter Levashov operated botnets[1] under various aliases, most notably "Peter Severa". His botnets, which included the Storm, Waledac, and Kelihos botnets, (a) harvested personal information and means of identification (including email addresses, usernames and logins, and passwords) from infected computers; (2) disseminated spam; and (3) distributed malware, including Trojans and ransomware. Over the course of his criminal career, Levashov participated in and moderated various online criminal forums on which stolen identities and credit cards, malware, and other criminal tools of cybercrime were traded and sold. In so doing, Levashov used, among other online identifiers, ICQ number 104967, jabber@honese.com, and peter@severa.biz to chat or communicate with others online.

Levashov controlled and operated the Kelihos botnet through "command and control servers", which enabled Levashov to issue commands to any and all computers infected with the Kelihos malware. He operated the Kelihos botnet through, among other means, a virtual private network ("VPN") connection/proxy, multiple servers distributed among multiple countries, and the servers known as "bulletproof hosts".[2]

In so doing, Levashov advertised his botnet's services on various on-line forums and customers would knowingly pay him to distribute spam and other malware, including ransomware. Levashov also recruited and paid affiliates to disseminate the Kelihos botnet by infecting protected computers. Levashov and his co-conspirators knew that the Kelihos botnet would, among other things, access infected computers to harvest thousands of credentials that were then used by the botnet to send spam. Among the spam that Levashov sent through the Kelihos botnet was spam containing links to websites that would infect the computer with ransomware. Levashov monitored the stability and efficacy of the Kelihos botnet through an on-line "dashboard".

In furtherance of the conspiracy and to affect the objects of the conspiracy, Levashov and his co-conspirators committed and caused to be committed the following overt acts, among others, in the District of Connecticut and elsewhere:

    a.    On March 2, 2016, Levashov sent an email from peter@severa.biz to a customer stating that "mailing costs 500 usd per 1 mil emails, 750 us=d per 2mil, 1k per 3mil."

---

[1] A "botnet" is a network of private computers infected and damaged with malicious software and controlled as a group without the owners' knowledge to commit online crimes, e.g., to send spam messages or collect personal information from the infected computer.

[2] A "bulletproof host" is a company that rents online servers located in foreign countries which often do not have criminal laws on cybercrime or effective cooperation with U.S. law enforcement. These companies will frequently ignore complaints about or legal process issued to them for customers suspected of criminal conduct.

Vadim Glozman, Esq.
September 12, 2018
Page 16

    b.    From May 5, 2016 to May 9, 2016, Levashov accessed a WebMoney Account associated with WebMoney identifier ending in 4986. Within this account was a WebMoney purse, ending in 1018, into which his clients deposited payments for his criminal services. Levashov has, on occasion, accessed this account from a computer with the Internet Protocol ("IP") address 91.122.62.16, which was the IP address assigned to the defendant's home WiFi service.

    c.    On September 22, 2016, Levashov disseminated the JokeFromMars ransomware via the Kelihos botnet to more than 10 computers.

    d.    From October 1, 2016 until December 8, 2016, Levashov accessed a computer server with an IP address of 85.17.31.90, which was the IP address assigned to his VPN.

    e.    On December 15, 2016, Kelihos harvested credentials from a File Transfer Protocol (i.e. an Internet service which is used to transfer files from one computer to another) client from a computer in Connecticut.

    f.    On March 21, 2017, Levashov instructed a customer for a spam campaign to pay him by bitcoin and stated that he charged $300 per 1 million emails, but more for phishing and other scams.

Some of the spam that Levashov distributed contained advertisements in furtherance of "pump and dump" schemes, which sought to boost the price of various stocks through recommendations based on false statements. For example, on March 22, 2017, for the purpose of executing and attempting to execute a pump and dump scheme and with the intent to defraud, Levashov caused a wire to be sent via a chat platform from outside of Connecticut to an individual in Connecticut.

On or about July 15, 2016, during and in relation to the intentional damage to a protected computer charged in Count One and the wire fraud charged in Count Four, Levashov possessed and used the email address/username and password of a real person, Victim S.B., who resided in Connecticut, in order to send spam as part of the Kelihos botnet. Victim S.B. did not authorize Levashov's use of her email address and password.

The computers infected as part of any and all criminal activity associated with the Kelihos botnet were used in and affecting interstate and foreign commerce and communication. Levashov and his co-conspirators did not seek, nor were they given, permission to install the Kelihos botnet on victims' computers or to use the victims' computers as part of the Kelihos botnet. At the time of Levashov's arrest, Kelihos infected at least 50,000 computers. The parties stipulate and agree that it would cost as much $149 per computer to remove the Kelihos virus from each infected computer. The defendant also agrees that the unlawful gain from the criminal conduct described above exceeds $3.5 million.

*Vadim Glozman, Esq.*
*September 12, 2018*
*Page 17*

    This written stipulation is part of the plea agreement.  The defendant and the Government reserve their right to present additional offense conduct and relevant conduct to the Court in connection with sentencing.

_____
PETER YURVEVICH LEVASHOV
The Defendant

_____
VADIM GLOZMAN, ESQ.
Attorney for the Defendant

_____
VANESSA RICHARDS
ASSISTANT U.S. ATTORNEY

_____
DAVID T. HUANG
ASSISTANT U.S. ATTORNEY

_____
ANTHONY TEELUCKSINGH
SENIOR COUNSEL
DEPARTMENT OF JUSTICE
COMPUTER CRIMES & INTELLECTUAL
PROPERTY SECTION

*Vadim Glozman, Esq.*
*September 12, 2018*
*Page 18*

## RIDER CONCERNING RESTITUTION

The Court shall order that the defendant make restitution under 18 U.S.C. § 3663A as follows:

1.  If the offense resulted in damage to or loss or destruction of property of a victim of the offense:

    A.  Return the property to the owner of the property or someone designated by the owner; or

    B.  If return of the property is impossible, impracticable, or inadequate, pay an amount equal to:

        The greater of -
        (I)  the value of the property on the date of the damage, loss, or destruction; or

        (II) the value of the property on the date of sentencing, less the value as of the date the property is returned.

2.  In the case of an offense resulting in bodily injury to a victim –

    A.  Pay an amount equal to the costs of necessary medical and related professional services and devices related to physical, psychiatric, and psychological care; including non-medical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

    B.  Pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

    C.  Reimburse the victim for income lost by such victim as a result of such offense;

3.  In the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services; and

4.  In any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

The order of restitution has the effect of a civil judgment against the defendant. In addition to the Court-ordered restitution, the Court may order that the conditions of its order of restitution be made a condition of probation or supervised release. Failure to make restitution as ordered may result in a revocation of probation, 18 U.S.C. § 3565, or a modification of the conditions of supervised release, 18 U.S.C. § 3583(e). Failure to pay restitution may also result in the defendant being held in contempt, or the defendant's re-sentencing to any sentence which might originally have been imposed by the Court. *See* 18 U.S.C. §§ 3613A, 3614. The Court may also order that the defendant give notice to any victim(s) of his offense under 18 U.S.C. § 3555.