UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - x
                                :
UNITED STATES OF AMERICA        :  No.  3:17CR83(RNC)
                                :
          vs.                   :
                                :
PETER YURYEVICH LEVASHOV,       :
                                :  HARTFORD, CONNECTICUT
                 Defendant.     :  SEPTEMBER 12, 2018
                                :
- - - - - - - - - - - - - - - - x

CHANGE OF PLEA


     BEFORE:

          HON. ROBERT N. CHATIGNY, U.S.D.J.


APPEARANCES:

     FOR THE GOVERNMENT:

          U.S. ATTORNEY'S OFFICE-Bgpt
          1000 Lafayette Boulevard
          10th Floor
          Bridgeport, Connecticut 06604
          BY:  VANESSA RICHARDS, AUSA

          U.S. ATTORNEY'S OFFICE-NH
          157 Church Street
          P.O. Box 1824; 23rd Floor
          New Haven, Connecticut 06510.
          BY:  DAVID TIEN-WEI HUANG, AUSA

     FOR THE DEFENDANT:

          VADIM GLOZMAN
          53 W. Jackson Boulevard, Suite 1410
          Chicago, Illinois 60604


                              Darlene A. Warner, RDR-CRR
                              Official Court Reporter

1                            10:04 A.M.

2

3            THE COURT:  Good morning.  This is the Levashov

4    case.  Would counsel please enter their appearances.

5            MS. RICHARDS:  Good morning, Your Honor, Vanessa

6    Richards for the government.

7            MR. HUANG:  David Huang on behalf of the

8    government.  Good morning, Your Honor.

9            MR. TEELUCKSINGH:  Good morning, Your Honor,

10   Anthony Teelucksingh on behalf of the government.

11           THE COURT:  Good morning.

12           MR. GLOZMAN:  Good morning, Your Honor, Vadim

13   Glozman on behalf of Peter Levashov, who is to my right,

14   along with the Russian interpreter.

15           THE COURT:  Thank you.

16           The clerk will swear in the interpreter at this

17   time.

18                   (Interpreter sworn)

19           THE CLERK:  Please state your name and the

20   language you will be interpreting for the record.

21           THE INTERPRETER:  Alexander Tetradze, Russian.

22           THE CLERK:  Thank you.

23           THE COURT:  Mr. Glozman, I understand that

24   Mr. Levashov proposes to change his plea with regard to

25   some of the counts of the indictment?

1              MR. GLOZMAN:  That's correct, Your Honor,

2    pursuant to the written plea agreement we hope to enter

3    into before Your Honor today.

4              THE COURT:  All right.  Mr. Glozman, have you

5    had any difficulty communicating with Mr. Levashov?

6              MR. GLOZMAN:  Absolutely no difficulty

7    communicating with Mr. Levashov.

8              THE COURT:  Do you have any doubt about his

9    competence to proceed at this time?

10             MR. GLOZMAN:  I have no doubt about his

11   competence.

12             THE COURT:  Do you know of any reason why we

13   should not proceed at this time?

14             MR. GLOZMAN:  No, Your Honor.

15             THE COURT:  Mr. Levashov, addressing you

16   directly, are you having any difficulty understanding what

17   is going on here today?

18             THE DEFENDANT:  No, Your Honor.

19             THE COURT:  Are you satisfied with the work that

20   is being done by the interpreter?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  Given your state of mind this

23   morning, do you feel capable of making important decisions

24   today?

25             THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  In the last day or so, have you had

2     any drugs or medicines that affect your ability to think?

3          THE DEFENDANT:  No, Your Honor.

4          THE COURT:  To communicate?

5          THE DEFENDANT:  No, Your Honor.

6          THE COURT:  How is your health today?

7          THE DEFENDANT:  Good enough, Your Honor.

8          THE COURT:  Have you recently been under the

9     care of a doctor?

10          THE DEFENDANT:  No, Your Honor.

11          THE COURT:  Do you know of any reason why we

12    should not go forward at this time?

13          THE DEFENDANT:  No, Your Honor.

14          THE COURT:  Are you satisfied with the work that

15    is being done for you by your lawyer, Mr. Glozman?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Are you satisfied that the two of

18    you -- you and Mr. Glozman -- have spent enough time

19    reviewing your case?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Are you satisfied that you've spent

22    enough time discussing the case?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Are you satisfied that you've given

25    enough time and attention to your possible options in the

1    case, meaning whether to change your plea or go to trial?

2               THE DEFENDANT:  Yes, Your Honor.

3               THE COURT:  All right, then.

4               Do you need a postponement for any reason?

5               THE DEFENDANT:  No, Your Honor.

6               THE COURT:  Mr. Levashov, under the law that

7    applies here, I cannot accept a guilty plea from a person

8    unless I first speak with the person in open court in

9    order to inform the person of a number of important

10   matters and in order to make sure that the person

11   understands those matters.

12              Basically, the law requires me to make sure that

13   you understand your rights, including the rights that you

14   would be giving up by pleading guilty.

15              I need to make sure that you have decided to

16   plead guilty because you believe it is in your best

17   interest to do so, and specifically that it is preferable

18   to going to trial.

19              I need to ensure that you have decided to plead

20   guilty after fully reviewing the case with your counsel;

21   that you know the possible penalties that could be imposed

22   on you by the Court as a result of your guilty plea,

23   including imprisonment, fines, forfeitures, and

24   restitution; I also need to ensure that in pleadings

25   guilty, you are acting voluntarily and not because of

1   force, threats or promises, other than promises in the

2   plea agreement.

3           Finally, I need to be sure that you should be

4   permitted to plead guilty because you are in fact guilty.

5           In order to comply with these legal

6   requirements, I need to ask you questions while you are

7   under oath and you must answer the questions truthfully.

8   If you were to knowingly make a false statement while

9   under oath, that would be a crime.  In that event, the

10   government would have a right to prosecute you based on

11   the false statement and it would be able to use the false

12   statement against you.

13           Do you understand, sir?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  Do you wish to be placed under oath

16   at this time?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  All right.  The clerk will place the

19   defendant under oath.

20           THE CLERK:  Please raise your right hand.

21               (Defendant sworn)

22           THE COURT:  Mr. Levashov, if at any time, you

23   would like to speak privately with Mr. Glozman, you have a

24   right to do so and I'll be happy to give you that

25   opportunity.  If you don't ask for an opportunity to speak

1    with him privately, I will assume that you are comfortable

2    going forward.

3              Do you understand?

4              THE DEFENDANT:  Yes, I understand.

5              THE COURT:  All right.

6              Also, if at any time you do not understand what

7    is going on, please let me know and I will do my best to

8    explain so that you do understand.  It's important that

9    you understand.  If you do not tell me that you are having

10   difficulty understanding what is going on, I will assume

11   that you do understand and I will just keep going.

12             So if you have any difficulty at any time, will

13   you let me know, please?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  What is your full name, please?

16             THE DEFENDANT:  Levashov, Peter Yuryevich.

17             THE COURT:  Have you used any aliases?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  Can you tell me those aliases,

20   please?

21             THE DEFENDANT:  Just one:  Peter Severa.

22             Actually, yes, I used one more:  Sergey

23   Astakhov.

24             THE COURT:  Mr. Glozman, can you give me the

25   spelling of these aliases, please?

1              MR. GLOZMAN:  Yes, Your Honor.

2              As it relates to Peter Severa, first name is --

3    has two spellings, one is common, P-E-T-E-R, the other is

4    P-E-T-R, and Severa is S-E-V-E-R-A.

5              As it relates to the alias Sergey Astakhov,

6    first name is S-E-R-G-E-Y and the last name is

7    A-S-T-A-K-H-O-V.

8              THE COURT:  Thank you.

9              How old are you, Mr. Levashov?

10             THE DEFENDANT:  Thirty-eight, Your Honor.

11             THE COURT:  Where were you born?

12             THE DEFENDANT:  My city when I was born changed

13   the name.  So it my documents in my passport, it's South

14   Petersburg, but in the year I was born it was different

15   name of the city, it was Leningrad.

16             So it's now like it's South Petersburg, it was

17   Leningrad.

18             THE COURT:  Of what country are you a citizen?

19             THE DEFENDANT:  Russia, Your Honor.

20             THE COURT:  How far did you go in school?

21             THE DEFENDANT:  I have two master degree, your

22   Honor:  Engineering and economical.

23             THE COURT:  Where did you get those degrees?

24             THE DEFENDANT:  St. Petersburg Technical

25   University, Your Honor.

1           THE COURT:  Are you able to understand the

2    English language?

3           THE DEFENDANT:  I think, yes, Your Honor.

4           THE COURT:  Can you read English?

5           THE DEFENDANT:  Yes, Your Honor.

6           THE COURT:  I explained that I need to be sure

7    you understand your rights, including the rights that you

8    would be giving up by pleading guilty, and I'm going to

9    address these matters now.

10          The first and most important thing you need to

11   understand is that you have a right to continue to plead

12   not guilty even if you are guilty.  It often happens that

13   a person who is in fact guilty will exercise his right to

14   a jury trial rather than plead guilty, and under our law,

15   an accused has a right to do that.

16          If you were to continue to plead not guilty, you

17   would be entitled to a trial by jury.  The jury would

18   consist of 12 people summoned from the community who would

19   be selected for the jury on the understanding that they

20   could be fair and impartial.

21          You would have a right to be represented at the

22   trial by Mr. Glozman, or another lawyer, and you would

23   also be entitled to be represented by a lawyer at every

24   other stage of the case, including any appeal.  If you

25   were unable to afford a lawyer, the court would appoint a

1    lawyer to represent you at no cost to you, and like any

2    other lawyer, the lawyer's obligation would be solely to

3    you.

4            At the trial, you would be presumed innocent of

5    the charges and the government would have to prove your

6    guilt beyond a reasonable doubt to the satisfaction of

7    each and every member of the jury.  Unless all 12 jurors

8    were convinced beyond a reasonable doubt, you could not be

9    found guilty of any charge.  You would have a right to be

10   found not guilty on any charge for which the admissible

11   evidence failed to prove your guilt beyond a reasonable

12   doubt.

13           In the course of the trial, any witnesses for

14   the government would have to come to court and testify.

15   You would have a right to see, hear, confront and question

16   any and all witnesses.  You would have a right to object

17   to the testimony of any witness and seek to have it

18   excluded.

19           You would also have a right to object to and

20   seek to exclude any other type of evidence offered by the

21   government besides the testimony of witnesses, meaning any

22   document or any other tangible thing.

23           At the trial, you would have a right to testify

24   if you wished to do so.  You would also have a right to

25   remain silent and not testify and you could not be

1    required to testify.  If you chose not to testify, the

2    jury would be instructed by the Court that under our

3    Constitution an accused person has a right not to testify.

4    The jury would be instructed that if you chose not to

5    testify, they could not penalize you in any way for

6    exercising this basic right.  The jury would also be

7    instructed that they could not consider your exercise of

8    this right or discuss it in their deliberations.

9         If you took this case to trial, you would have a

10   right to present evidence in your own defense, including

11   the testimony of witnesses, and you would have the right

12   to use subpoenas issued by the Court to compel the

13   production of evidence in your favor including the

14   testimony of witnesses.  In other words, you would have

15   the right to use the law to require witnesses to come to

16   court even if they didn't want to do so voluntarily.

17        However, you would have no obligation to present

18   any evidence whatsoever, you would have no obligation to

19   call any witnesses, and if you chose not to present

20   evidence, the jury would be instructed that an accused has

21   no obligation to present any evidence whatsoever.  Under

22   our Constitution, an accused person has no obligation to

23   prove his or her innocence.  Instead, the law requires the

24   government to prove guilt, if it can, beyond a reasonable

25   doubt.  The burden of proof is on the government, not on

1   the accused.

2           If you decide to plead guilty, I will have to

3   ask you questions about what you did that show that you

4   are in fact guilty.  You will have to answer those

5   questions and acknowledge your guilt.  In doing so, you

6   will be giving up your right to remain silent and not

7   incriminate yourself.  Under the Constitution, an accused

8   person does have a right to remain silent and avoid

9   self-incrimination.

10          If you plead guilty and your plea is accepted,

11  you will be giving up your right to a jury trial and these

12  other rights that I have just outlined.  There will be no

13  trial of any kind.  Instead, you will be found guilty by

14  the Court on the basis of your guilty plea alone.  That

15  finding will be the equivalent of, and have the same legal

16  effect as, a finding of guilty by a jury after a full and

17  fair trial.

18          If you plead guilty and your plea is accepted,

19  you will be giving up any and all defenses that you might

20  have to these charges.  For example, if you think the

21  government might have violated your constitutional rights

22  because of the way in which they have obtained evidence

23  against you, you will be waiving any such objection by

24  pleading guilty.  In other words, you can't plead guilty,

25  have your plea accepted by the Court, and later appeal on

1    the ground that evidence against you should have been

2    suppressed.

3              By pleading guilty and asking the Court to

4    accept your plea, you will waive any and all claims that

5    you might have based on anything the government has done

6    before today in connection with the investigation or

7    prosecution of this case.

8              Mr. Levashov, do you want to give up your right

9    to remain silent and not incriminate yourself?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  Do you want to give up your right to

12   a jury trial?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  Do you want to waive any claims,

15   defenses, objections and appeals that you might have based

16   on anything that the government has done before now?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  All right.  I have received a copy

19   of the proposed plea agreement.  It is in the form of a

20   letter addressed to Mr. Glozman.  The letter consists of a

21   total of 17 pages.

22             Mr. Levashov, have you seen this letter?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  Have you gone over the letter with

25   Mr. Glozman?

1            THE DEFENDANT:  Yes, Your Honor.

2            THE COURT:  Have you discussed the contents of

3    the letter with Mr. Glozman?

4            THE DEFENDANT:  Yes, Your Honor.

5            THE COURT:  Do you believe you understand the

6    contents of the letter?

7            THE DEFENDANT:  Yes, Your Honor.

8            THE COURT:  Does the letter fully and accurately

9    reflect your understanding of the agreement that you have

10   reached with the government?

11           THE DEFENDANT:  Yes, Your Honor.

12           THE COURT:  Mr. Glozman, can you confirm that

13   you have discussed the terms of the plea agreement with

14   Mr. Levashov?

15           MR. GLOZMAN:  Your Honor, for the record, I have

16   discussed and explained each and every term contained in

17   that written plea offer that Your Honor just spoke of.

18           THE COURT:  Is that right, Mr. Levashov?

19           THE DEFENDANT:  Yes, Your Honor.

20           THE COURT:  Mr. Glozman, are you satisfied that

21   Mr. Levashov fully understands the terms of the agreement?

22           MR. GLOZMAN:  Yes, Your Honor.

23           THE COURT:  Let me ask counsel for the

24   government to please summarize the essential terms of the

25   agreement, and I ask Mr. Glozman and Mr. Levashov to

1     please pay close attention.

2              Ms. Richards?

3              MS. RICHARDS:  Thank you, Your Honor.

4              Your Honor mentioned that the written plea

5     agreement is 17 pages.  It's actually 18 when we include

6     the rider concerning restitution.  But you're right, the

7     letter itself is 17 pages.  It's addressed to defense

8     counsel, Mr. Glozman.

9              It contemplates that the defendant would plead

10    guilty to four counts within the indictment, specifically

11    Count One charging him with intentional damage to a

12    protected computer in violation of 18 United States

13    Code Sections 1030(a)(5)(A) and 1030(c)(4)(B) and 18

14    United States Code Section 2.

15             The second count that it contemplates him

16    pleading guilty to is in fact Count Two, charging him with

17    conspiracy in violation of Title 18 United States Code

18    Section 371.

19             The next count is Count Four, charging him with

20    wire fraud in violation of Title 18 United States

21    Code Sections 1343 and 2.

22             And finally Count Eight charging him with

23    aggravated identity theft in violation of 18 United States

24    Code Sections 1028A and 2 in the indictment, Your Honor.

25             The plea agreement goes into great detail about

1    the specific elements that the government would have to

2    prove, and I'm going to go through those now for the

3    record.

4              In order to be found guilty of Count One, the

5    defendant -- the essential elements would need to be

6    satisfied, and those elements are:

7              First, that the defendant knowingly caused the

8    transmission of a program, information, code and command;

9              Second, that as a result of such conduct, the

10   defendant intentionally caused damage to a protected

11   computer without authorization;

12             And third, that the damage affected ten or more

13   protected computers during any one-year period, and that

14   the loss to one or more persons during any one-year period

15   from the defendant's course of conduct affecting protected

16   computers aggregated to at least $5,000 in value.

17             THE COURT:  Let me ask you to please pause.

18             Mr. Glozman, you look like you're in need of

19   something.

20             MR. GLOZMAN:  No, Your Honor, I apologize, I

21   gave the Russian interpreter a copy of the draft plea so

22   it would be easier for him to translate as Ms. Richards

23   goes through it.

24             THE COURT:  Very good, thank you.

25             Do you have another copy?

1           MR. GLOZMAN:  I do, Your Honor.

2           THE COURT:  All right, fine.

3           Mr. Levashov, Ms. Richards has just set out the

4    facts that the government would have to prove in order to

5    obtain a conviction under Count One of the indictment.

6    Were you listening as she explained those facts?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  So do you understand that those are

9    the facts the government would have to prove in order to

10   prevail on Count One?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  All right, thank you.

13          Ms. Richards?

14          MS. RICHARDS:  Thank you.

15          With respect to Count Two, the essential

16   elements or things that the government would need to prove

17   were we to proceed to trial are as follows:

18          That on or about the dates charged in the

19   indictment, a conspiracy, that is an agreement, existed to

20   commit intentional damage to a protected computer,

21   accessing protected computers in furtherance of fraud and

22   threatening to damage a protected computer;

23          Second, that the defendant knowingly and

24   intentionally became a member of that conspiracy;

25          Third, that one of the members of the conspiracy

1     knowingly committed at least one of the overt acts charged

2     in the indictment;

3            And fourth, that one or more of the overt acts

4     were committed to further some objective of the

5     conspiracy.

6            With respect to Count Four --

7            THE COURT:  I'm going to ask you to pause again.

8     I just want to be sure Mr. Levashov is clear with regard

9     to the elements the government would have to prove with

10    expect to each count.

11           Mr. Levashov, having listened to Ms. Richards

12    state the elements that the government would have to prove

13    in order to obtain a conviction under Count Two, can you

14    confirm that you understand what the government's burden

15    would be with regard to that count?

16           THE DEFENDANT:  Yes, Your Honor.

17           THE COURT:  All right, thank you.

18           MS. RICHARDS:  With respect to Count Four, the

19    government would have to prove the following:

20           First, that there was a scheme or artifice to

21    defraud to obtain money or property by materially false

22    and fraudulent pretenses, representations and promises, as

23    alleged in the indictment;

24           Second, that the defendant knowingly and

25    willfully participated in the scheme or artifice to

1    defraud with the knowledge of its fraudulent nature and

2    with specific intent to defraud;

3            And lastly, third, that in execution of that

4    scheme, the defendant used or caused the use of a wire

5    communication in the interstate or foreign commerce as

6    charged in the indictment.

7            THE COURT:  Mr. Levashov, again, let me ask you

8    to please confirm that you understand that those are the

9    facts the government would have to prove in order to

10   convict you of the offense charged in Count Four.

11           THE DEFENDANT:  Yes, Your Honor.

12           THE COURT:  Thank you.

13           MS. RICHARDS:  Finally, Your Honor, with respect

14   to Count Eight, the government would have to prove:

15           First, that on or about the date charged in the

16   indict, the defendant knowingly transferred, possessed and

17   used a means of identification of another person, the

18   defendant did so without lawful authority, and the

19   defendant did so during and in relation to the felony

20   violation of Title 18 United States Code

21   Section 1030(a)(5)(A) as charged in Count One and the

22   felony violation of Title 18 United States Code

23   Section 1343 charged in Count Four.

24           THE COURT:  Thank you.

25           Mr. Levashov, do you understand those are the

1    facts that the government would have to prove in order to

2    obtain a conviction under Count Eight of the indictment?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  Ms. Richards, before you proceed,

5    let me ask you to please be seated and I will call on

6    Mr. Glozman at this time to tell me, in general terms, why

7    counsel believes that entering into this agreement is in

8    Mr. Levashov's best interest.

9              MR. GLOZMAN:  Your Honor, after conducting a

10   complete and thorough analysis of the discovery in this

11   matter, it is our position that the government would in

12   fact be able to prove their case, at least as it concerns

13   the four counts contained within the plea agreement,

14   beyond a reasonable doubt, and it is in Mr. Levashov's

15   best interest to enter into a plea of guilty in this

16   matter so as to obtain the most favorable advisory

17   guideline range pursuant to the United States Sentencing

18   Guidelines.

19             THE COURT:  In your opinion, Mr. Glozman, with

20   regard to these counts, does the government have a strong

21   case?

22             MR. GLOZMAN:  Yes, Your Honor.  As I previously

23   mentioned, it is my belief that the government would be

24   able to prove each element of each of the four counts

25   contained therein beyond a reasonable doubt.

1            THE COURT:  Do you see any viable defenses to

2      these counts?

3            MR. GLOZMAN:  Not these four, Your Honor.

4            THE COURT:  All right.

5            Mr. Levashov, addressing you directly, do you

6      believe that entering into this agreement is in your best

7      interest?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  Other than whatever promises are

10     contained in the plea agreement, has anybody made any

11     other promises to you that have caused you to want to

12     plead guilty?

13            THE DEFENDANT:  No, Your Honor.

14            THE COURT:  Has anybody made any promises to you

15     as to what your sentence will be?

16            THE DEFENDANT:  No, Your Honor.

17            THE COURT:  Is anybody putting pressure on you

18     to get you to plead guilty?

19            THE DEFENDANT:  No, Your Honor.

20            THE COURT:  Are you doing this voluntarily of

21     your own free will?

22            MR. GLOZMAN:  Yes, Your Honor.

23            THE COURT:  Because you believe it is in your

24     best interest?

25            THE DEFENDANT:  Yes, Your Honor.

1              THE COURT:  All right.

2              Ms. Richards, let me return to you and ask you

3     to please state what the other essential terms of the

4     agreement are, including the potential penalties; and

5     Mr. Levashov, I ask you to please pay close attention.

6              MS. RICHARDS:  Thank you, Your Honor.

7              Count One, as laid out on page 3 of the plea

8     agreement, carries the following maximum penalties.

9              If he is convicted and he accepts this plea,

10    Count One would carry a maximum penalty of ten years in

11    prison, a supervised release term of not more than three

12    years, as well as, in terms of supervised release -- I

13    should just clarify.  Supervised release begins after a

14    period of incarceration during which there would be terms

15    and conditions that the defendant would have to comply

16    with.  If he violated any of those terms or conditions,

17    under Count One he could face a further term of

18    imprisonment of up to two years per violation with no

19    credit for time already spent on supervised release.

20             Count Two carries a maximum term of imprisonment

21    of five years and, again, a supervised release term of not

22    more than three years.  It is the same potential exposure

23    for supervised release violations as exists in Count One.

24             With respect to Count Four, the maximum term of

25    incarceration is 20 years.  It has the same supervised

1     release term and same potential exposure for violations as

2     Count One and Count Two.

3              With respect to Count Eight, Count Eight carries

4     a mandatory term of imprisonment of two years which must

5     run consecutively to any other term of incarceration that

6     could be imposed.  It has a supervised release term of not

7     more than a year, and if there's any violation during that

8     supervised release term, the defendant could be subjected

9     to an additional year in prison.

10             All of these counts, with respect to supervised

11    release, it should be made clear, these are not separate

12    supervised release periods that could essentially be

13    stacked or run one right after the other, rather

14    supervised release terms have to run concurrently.  So

15    here the defendant understands that Your Honor could only

16    impose a maximum total effective term of supervised

17    release of three years.

18             The fines in this case, all of the offenses

19    carry a maximum fine of $250,000.  The defendant's also

20    subject to the alternative fine provision as outlined in

21    Title 18 United States Code Section 3571.  Under that

22    section, the maximum fine that may be imposed on this

23    defendant is the greatest of either twice the gross gain

24    to him resulting from the offense, twice the gross loss

25    resulting from the offense, or $250,000.

1           There's a special assessment that's attached for

2    each count of conviction which aggregates here to $400.

3    The defendant is agreeing to pay the special assessment to

4    the Clerk of the Court today should his guilty plea be

5    accepted.

6           If Your Honor would like me to stop there?  Or I

7    could go on with respect to restitution and forfeiture.

8           THE COURT:  Let me ask you about the maximum

9    possible fine.

10          Under the law, it's $250,000 per count, which

11   totals a million dollars, but the alternative fine

12   provision could be vastly greater?

13          MS. RICHARDS:  Vastly greater, yes, Your Honor,

14   as we'll get to when we're talking about the guideline

15   stipulation.

16          Mr. Levashov is, I believe, stipulating to a

17   loss figure that's in excess of $3.5 million.

18          THE COURT:  Thus under the alternative fine

19   provision based on that stipulation, the maximum possible

20   fine could be as much as $7 million?

21          MS. RICHARDS:  That's correct, Your Honor.

22   That's the maximum.

23          THE COURT:  All right.  I'll ask you to please

24   pause once more while I address Mr. Levashov directly.

25          Mr. Levashov, as I mentioned, before I can take

1    a guilty plea, I need to be sure the person understands

2    the maximum possible penalties that could be imposed.

3    Just because I'm telling you about the maximum possible

4    penalties doesn't mean that I'm going to impose them.  The

5    law requires me to inform you of the maximum possible

6    penalties so you know what the worst case scenario could

7    be, so to speak.  The actual sentence you receive could

8    be, and likely would be, less.

9              But to be clear, if you plead guilty to these

10   four counts, you could be sentenced to a maximum term of

11   imprisonment of as much as 30 years, a mandatory minimum

12   term of imprisonment of at least two years, a supervised

13   release term of three years.  While on supervised release,

14   you would have to comply with various conditions,

15   including that you not commit another offense.  If you

16   were to violate any of those conditions, your supervised

17   release could be revoked and you could be sentenced to a

18   further term of imprisonment of up to two years.

19             As just discussed, you face a maximum possible

20   fine of $7 million and you are required to pay a special

21   assessment of $100 on each of the four counts for a total

22   of $400.

23             Now I'm going to ask Ms. Richards to talk about

24   any applicable forfeiture and restitution.

25             MS. RICHARDS:  Your Honor, before we continue, I

1    just want the record to be clear.  I think Your Honor

2    actually stated that the total maximum exposure on all

3    counts when aggregated would be 30 years.  It's actually

4    35.  Thirty-five years and then a two-year mandatory

5    minimum sentence on top of that.  So I think his total

6    exposure is actually 37 years.

7              THE COURT:  Okay.  Let me be clear about that.

8    I simply added up what I understood to be the maximum

9    possible terms as to each of the four counts and it

10   wouldn't be the first time my arithmetic failed me.

11             MS. RICHARDS:  That's why we're lawyers, Your

12   Honor.

13             THE COURT:  Count One is ten years, Count Two is

14   five, so that gets us to 15; count Four is 20, so that's

15   35; and then Count Eight is the mandatory two, so it's 37

16   years all told.

17             Understood, Mr. Levashov?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  All right, thank you.

20             With regard to forfeiture and restitution?

21             MS. RICHARDS:  Thank you, Your Honor, the plea

22   agreement does contemplate both.

23             Restitution -- the Court must order a

24   restitution in this case pursuant to Title 18 United

25   States Code Section 3663A, and the government in this plea

1    agreement is reserving its right to seek restitution on

2    behalf of victims consistent with that provision.  The

3    scope and the effect of the order of restitution are set

4    forth in that rider that I mentioned just at the beginning

5    of this colloquy, and the restitution would be payable

6    immediately unless otherwise ordered by the Court.

7              With respect to forfeiture, pursuant to various

8    subsections of Title 18 as well as Title 28 and based on

9    his commission of illegal acts in Count One and Count Two

10   and Count Four, the defendant is agreeing to forfeit a

11   specific list of assets which are delineated in the plea

12   agreement.

13             A web money account associated with web money

14   identifier ending in 4986, specific items that were seized

15   from the defendant at the time of his arrest in Spain in

16   April of 2017, specifically a memory card removed from a

17   Sony laptop, a Sony tablet, another memory card that was

18   removed from that tablet, an Apple watch, an Apple iPhone

19   a computer mouse, a WiFi 4G device, and a thumb drive.

20             The plea agreement also contemplates that the

21   defendant would ultimately forfeit a sum of money equal to

22   the total amount of money, real or personal, which

23   constitutes or is derived from proceeds traceable to

24   Counts One, Two and Four.

25             I don't know if Your Honor would like me to stop

1    at this point?

2            THE COURT:  Yes, please.

3            With regard to restitution, what does the

4    government anticipate?

5            MS. RICHARDS:  So, Your Honor, I think at this

6    point we are working with the Department of Justice in

7    terms of trying to derive an appropriate plan in order to

8    notify victims.  The defendant's botnet had infected more

9    than 50,000 computers at the time of his arrest and its

10   dismantlement.  We are aware of the IP addresses

11   associated with those affected computers, but it's very

12   challenging to then drill that down to an actual

13   individual.

14           I think our plan, which is in its early stages,

15   Your Honor, is it's most likely to be that there will be

16   some form of public communication and a method or vehicle

17   by which victims could notify the Department of Justice

18   that they believe they were in fact affected, et cetera,

19   things along those lines.

20           Additionally, with respect to those victims that

21   were within the District of Connecticut that we have

22   identified, we will obviously work with them in terms of

23   determining what an appropriate restitution figure would

24   be.

25           THE COURT:  Is it possible for the government to

1    provide an estimate at this time of what the maximum

2    possible restitution could be?

3              MS. RICHARDS:  Your Honor, I think that would be

4    challenging at this point in time.  I think I'll probably

5    be in a better situation to give you a floor than to give

6    you a ceiling, candidly.

7              If we assume that the remediation of the

8    computers in this case, which was slightly north -- of

9    infected computers -- was slightly north of 52,000, that

10   it cost roughly $150 per Geek Squad to remediate those

11   computers, you would be looking at -- if all of those

12   people, if every single one of them came forward and said,

13   yes, I would like my $150 to remediate my computer, it

14   would be $7.8 million.

15             That does not include any cost to Microsoft

16   which has -- through the course of addressing the

17   defendant's conduct, were trying to protect its computers

18   and its software from the defendant's conduct -- has taken

19   certain remediative steps, and I am not in a position

20   right now to give you an estimate of what those costs

21   would be.

22             I would say also, though, to the extent that

23   it's relevant to today's proceedings, just so Your Honor

24   is aware, we have reached out to the victims in

25   Connecticut already in anticipation of this plea.  We have

1     not heard back from them, which is not entirely

2     surprising, but efforts were made to communicate with them

3     concerning the plea.

4                THE COURT:  Thank you.

5                MR. GLOZMAN:  Your Honor, just so the record is

6     clear, there's been no agreement between the defendant and

7     the government as to this total amount of restitution that

8     may be eligible in this matter, and we're only subject to

9     the bottom of the loss calculation as it relates in this

10    agreement, Judge.

11               THE COURT:  So specifically?

12               MR. GLOZMAN:  The loss contemplation in this

13    plea has a floor of $3.5 million.  While we agree to that,

14    there has been no agreement between the parties as to

15    anything past that.

16               THE COURT:  So the government reserves the right

17    to argue for a higher loss amount?

18               MS. RICHARDS:  No, Your Honor, I think what

19    Attorney Glozman is saying is that the range here for the

20    loss figure is 3.5 million to I believe 9 million -- 9.5?

21    That's the Guideline range.

22               So in the stipulation of offense conduct which

23    we're going to speak about later, the defendant is

24    agreeing that the loss figure is more than $3.5 million

25    for purposes of the guideline calculation.

1              THE COURT:  All right.

2              MS. RICHARDS:  I believe what Mr. Glozman is

3      saying here is to the extent that the government in this

4      plea colloquy is representing that a restitution figure

5      could be well north of that, indeed almost double that.

6      He is reserving his rights to argue on the fact -- on the

7      basis to his client that that would be appropriate or

8      wrong, and that there is essentially nothing in the plea

9      agreement that would limit his ability to do that.

10             MR. GLOZMAN:  That's correct, Your Honor.

11             THE COURT:  All right, fine.  Thank you both.

12             MS. RICHARDS:  Your Honor, and just so I clarify

13     on the record, my colleague just notified me that in fact

14     one of the special agents did hear back from a victim and

15     the agent had an opportunity to discuss the plea with him

16     as would be appropriate under the Victim Witness

17     Notification Act.

18             THE COURT:  Thank you.

19             Mr. Levashov, with regard to restitution, it's

20     important for you to realize that the Court is required to

21     order restitution, and that means the Court is required to

22     enter appropriate orders that will help make victims

23     whole; and here, depending on how many victims come

24     forward, it's possible that the Court could order

25     restitution amounting to millions of dollars.

1              Do you understand?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  With regard to forfeiture, as

4    Ms. Richards explained and as the agreement states, by

5    pleading guilty pursuant to this agreement, you agree to

6    give up all of the items that are listed in the agreement

7    and waive any claim to any of those items.

8              I'm referring to the items listed on pages 5 and

9    6 of the agreement.

10             THE DEFENDANT:  Yes, Your Honor, except I want

11   to get my phone at least, if it's possible; but, yes, Your

12   Honor, my lawyer has told me that.

13             THE COURT:  Can we stop just for a second to be

14   sure there's no misunderstanding?

15             Looking at the list of items in the agreement at

16   pages 5 and 6, you understand, Mr. Levashov, that these

17   are the items that you are giving up?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  Mr. Glozman, there's something that

20   Mr. Levashov does not want to give up?

21             MR. GLOZMAN:  No, Your Honor.

22             One of the items that is subject to forfeiture,

23   and which he is not disputing, is the cell phone.  There

24   are contents on that cell phone which he would like to

25   retain, most specifically, a contact list, and that is

1     something that we can work on with the government.

2              This is not -- he's not objecting to the

3     forfeiture on that phone, just some information retained

4     on that phone, he'd like to retain that.

5              THE COURT:  I see.  Any problem with that?

6              MS. RICHARDS:  No, Your Honor.

7              THE COURT:  I imagine if there are other things

8     on the phone like photos, personal photos, that the

9     government would have no objection to Mr. Levashov keeping

10    those photos.

11             MS. RICHARDS:  We'll certainly discuss that with

12    the defendant, Your Honor.  More specifically with his

13    counsel.

14             THE COURT:  Very good, thank you.

15             With regard to possible penalties, we've covered

16    everything, I think, except immigration consequences.  Any

17    comment on that, Ms. Richards?

18             MS. RICHARDS:  Yes, Your Honor.  The plea

19    agreement actually specifically talks about that.  And if

20    we skip in the proposed plea agreement to the Waiver of

21    Rights section, there is a specific subsection on page 11

22    entitled "Waiver of Challenge to Plea Based on Immigration

23    Consequences."

24             The defendant has previously stated in the

25    course of this plea colloquy that he is in fact a Russian

1    national, he is not an American, and he needs to

2    understand that by pleading guilty here today, it could

3    have -- there are very real immigration consequences for

4    him; namely that at the conclusion of his sentence, should

5    he be sentenced to a period of incarceration or not, but

6    at the conclusion of his case, he could, and likely will,

7    face deportation as a result of these proceedings.

8              Additionally, he could be prevented from being

9    granted a Visa or naturalization should he ever want to

10   return to the United States at the conclusion of his

11   deportation.

12             The plea agreement, number one, makes that very

13   clear to the defendant.  But additionally explains to him

14   that there isn't a basis to withdraw his guilty plea.  We

15   don't know what the immigration consequences will actually

16   be for him.

17             So what we don't want to see happen is

18   essentially have him say, I didn't know that I would be

19   deported out of this country, I didn't know that I could

20   be denied citizenship, and so I want to now withdraw my

21   guilty plea.

22             The section in this colloquy is designed to

23   ensure that he does fully understand that and hence there

24   would be no basis for him to withdraw his guilty plea.

25             THE COURT:  Let me address Mr. Levashov on that

1    subject, please.

2              Mr. Levashov, do you understand that by pleading

3    guilty you are giving up rights with regard to the

4    immigration authorities.  Your guilty plea could, and

5    likely would, provide the basis for your removal from the

6    United States?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  It also could, and likely would,

9    prevent you from becoming a citizen of the United States,

10   and it also could, and likely would, prevent you from

11   returning to the United States if you were removed.

12             Do you understand, sir?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  All right.  I think we should take a

15   recess.  When we return, we can continue with a discussion

16   of the way the Sentencing Guidelines apply here before

17   turning to the defendant's guilty conduct.  We'll be in

18   recess for 20 minutes.

19                   (Whereupon, a recess followed)

20             THE COURT:  Mr. Glozman, are you all set to

21   resume?

22             MR. GLOZMAN:  Ready to resume, Your Honor.

23             THE COURT:  Ms. Richards?

24             MS. RICHARDS:  Yes, Your Honor.

25             THE COURT:  All right, fine, thank you.

1              The next subject that we need to address is the

2     way the Sentencing Guidelines work and how they may apply

3     here.

4              Mr. Glozman, I trust that you have discussed the

5     Sentencing Guidelines with Mr. Levashov in some detail, is

6     that right?

7              MR. GLOZMAN:  Yes, Your Honor.  For the record,

8     I discussed with Mr. Levashov the way guidelines work, the

9     way they're calculated, the way criminal history points

10    work in conjunction with the guideline and the points to

11    reach an advisory guideline range, and I have discussed

12    the guidelines that are applicable to this matter, both

13    the ones that we agree to with the government and the two

14    that we disagree with the government.

15             THE COURT:  Very good, thank you.

16             Mr. Levashov, can you please confirm that

17    Mr. Glozman has discussed the Sentencing Guidelines with

18    you?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Thank you.

21             Under the law that applies to sentencing, the

22    judge is required to impose a sentence that is sufficient

23    to serve certain purposes without being harsher than

24    necessary.  These purposes are set out in the applicable

25    statute.

1              These purposes require the Court to impose a

2      sentence that is sufficient to provide just punishment, to

3      reflect the seriousness of the offense, to promote respect

4      for law, to deter the individual who is being sentenced

5      and others from engaging in criminal activity, to protect

6      the public against further crimes on the part of the

7      defendant, and to provide the defendant with needed care

8      and treatment in the most effective manner.

9              In deciding what sentence is sufficient to serve

10     these purposes without being harsher than necessary, the

11     Court is required to make findings of fact, that is to say

12     factual determinations, concerning the offense conduct

13     that brings the individual before the Court for

14     sentencing, as well as the individual's history and

15     characteristics.

16             The Court makes these determinations based on

17     information provided by the Probation Office, which is

18     part of the court.  The Probation Office submits what's

19     called a presentence report containing the information,

20     and you and the government have an opportunity to object

21     to anything in the report that you think is inaccurate,

22     and you also have a right to add to the report any

23     information that you think should be included.

24             Both parties, that is you and the government,

25     also have an opportunity to submit your own papers

1    explaining what you think the Court should do.

2          In addition to making these factual

3    determinations about the offense and the history and

4    characteristics of the individual, the Court is required

5    to calculate the applicable Guideline range and the Court

6    is required to consider that range in deciding what the

7    sentence should be.

8          Please understand that the Court has a legal

9    obligation to calculate the applicable range to the best

10   of its ability, and if that range differs from the one

11   calculated by the parties, then in that event, it's the

12   Court's calculation that controls, and if the Court's

13   calculation differs from the one that you think should be

14   used or if it differs from the one the government thinks

15   should be used, that does not give you a basis for

16   withdrawing your guilty plea.

17         Do you understand?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  We will not be able to finally

20   determine the applicable Sentencing Guideline range until

21   we receive the presentence report from the Probation

22   Office and you and the government have had an opportunity

23   to submit whatever you would like the Court to consider,

24   and a hearing is held.  Until then, nobody can be sure

25   what the Guideline range will be.  People can and do try

1      to figure out, as best they can, what the range will be,

2      but nobody can know for sure until the hearing.

3             Do you understand?

4             THE DEFENDANT:  Yes, Your Honor.

5             THE COURT:  If it turns out that the guideline

6      range adopted by the Court is higher than the range you

7      would like the Court to apply and expect the Court to

8      apply, that will not give you a basis for withdrawing your

9      guilty plea.

10            Also it may be that the government will make a

11     request or recommendation with regard to sentencing.  The

12     Court is not required to grant any such request or follow

13     any such recommendation.  Deciding what the sentence

14     should be is the Court's responsibility, and if the Court

15     does not grant the government's request or follow the

16     government's recommendation, that will not give you a

17     right to withdraw your guilty plea.

18            Do you understand, sir?

19            THE DEFENDANT:  Yes, Your Honor.

20            THE COURT:  I've talked about the Court's

21     obligation to determine the applicable Guideline range.

22     Under the law, once the range is determined, the Court can

23     depart from that range.  It can go up or down from that

24     range, depending on the facts of the case.  There might be

25     facts about your case that would call for a sentence above

1   or below the Guideline range at the time of the sentencing

2   hearing.  But you won't be in a position to know that

3   until the hearing.  You may hope that the Court will find

4   some reason to grant a departure, but if the Court denies

5   any requested departure, that will not provide a basis for

6   you to withdraw your guilty plea.

7                   Do you understand?

8                   THE DEFENDANT:  Yes, Your Honor.

9                   THE COURT:  The plea agreement includes a

10   section on how the guidelines apply here, including a

11   partial stipulation.

12                   Ms. Richards, let me ask you to please summarize

13   that.

14                   MS. RICHARDS:  Certainly, Your Honor.

15                   The parties in this case are in agreement with

16   respect to the following:

17                   That the defendant's base offense level pursuant

18   to United States Sentencing Guidelines Section 2B1.1(a)(1)

19   is seven; that because there was a gain of more than

20   $3.5 million, there is an 18-point enhancement pursuant to

21   the United States Sentencing Guideline Subsection

22   2B1.1(b)(1)(J).

23                   Ten or more victims -- because there were ten or

24   more victims in this case, there is an additional

25   enhancement of two points pursuant to Guideline

1    2B1.1(b)(2)(A).  Because one of the crimes of conviction

2    is pursuant to Section 1030(a)(5)(A), there is an

3    additional four points added pursuant to Guideline

4    2B1.1(b)(18)(A)(ii).

5            And then the parties agree that because of his

6    prompt acceptance of responsibility in this case that at

7    the time of sentencing, provided that he complies with the

8    terms of the agreement, and specifically his

9    responsibilities as listed on page 7, the government will

10   agree to a three-point deduction for acceptance of

11   responsibility.

12           That's then where we part ways.

13           The government believes that there are two

14   additional enhancements that are applicable in this case

15   and the defense is reserving its right, in part, with

16   respect to those.

17           The government believes, and will be arguing at

18   sentencing, that a substantial part of the fraud in this

19   case was committed outside of the United States and it

20   involved the use of sophisticated means.  That would

21   result in a two-point enhancement pursuant to Guideline

22   2B1.1(b)10(B) and (C).

23           Additionally we believe that given the nature of

24   the crime and given the nature of the defendant's role in

25   the crime, he used a special skill that significantly

1   facilitated the commission or concealment of the offenses,

2   and so pursuant to Guideline 3B1.3, there would be an

3   additional two-point enhancement there.

4            While the defendant doesn't contest the factual

5   basis that leads the government to seek those

6   enhancements, he is reserving his right to argue from a

7   legal basis that they should not apply or that they would

8   result in a greater than necessary sentence under 3553(a).

9            The parties agree that the defendant is a

10  Criminal History Category I at this point, and so breaking

11  that down, the defendant's guideline calculation to which

12  the parties have again partially stipulated, would be an

13  adjusted offense level of 28; and assuming a criminal

14  history category of I would result in a range of 78 to 97

15  months in prison.

16           Because the defendant has pled -- is at least in

17  this agreement contemplating to plead guilty to

18  Count Eight charging him with aggravated identity theft --

19  there is a 24-month additional penalty that would be added

20  to that Guideline range.

21           So the fully adjusted range that both the

22  parties are agreeing would be appropriate is 102 to 121

23  months in prison, a fine range of $25,000 to $250,000.

24           The guideline calculation that the government

25  believes and will be advocating for is more applicable

1     would result in an adjusted offense level of 32.

2           Again assuming a Criminal History Category I, it

3     would result in a Guideline range of 121 to 151 months.

4     When you add the 24 months that runs consecutive to the

5     guilty plea in Count Eight, the fully adjusted offense

6     level would be 145 to 175 months and a fine range of

7     $35,000 to $350,000.

8           Under either calculation, the defendant's

9     looking at the same period of supervised release, which is

10    a period of one to three years, and the defendant also is

11    expressly clear on the fact that the Court may not reduce

12    the term of the Guideline range to account for the fact

13    that there is a mandatory minimum to two years.

14          Both parties are also reserving their rights to

15    seek departures or non-guideline sentences.  And as Your

16    Honor has stated, I think very clearly, the plea agreement

17    states as well that Your Honor is not bound by this

18    agreement with respect to the guideline determinations.

19    You will only know that at the time of sentencing and it

20    is solely within your discretion to determine what an

21    appropriate sentence is, and the defendant will not be

22    allowed to withdraw this plea in the event that what you

23    determine to be the appropriate sentencing guideline

24    differs.

25          THE COURT:  Thank you.

1           Mr. Levashov, did you hear what Ms. Richards

2    explained with regard to the Sentencing Guidelines as they

3    apply here?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE COURT:  The point I need to make for today

6    is the one I've already made, which is that the Court is

7    required to calculate the range for itself, and if that

8    range turns out to be higher than the one that you have in

9    mind or the one that the government has in mind, that

10   doesn't give you a basis for withdrawing your guilty plea.

11          Do you understand?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  So without beating a dead horse, so

14   to speak, you and the government agree that, based on the

15   information known today, the range would be at least 102

16   to 121 months, and the government takes the position that

17   it really should be 145 to 175 months.  I may wind up

18   agreeing that it's 102 to 121, or I may wind up saying,

19   you know, I think the government is right, it's 145 to

20   175.  Or I might come up with something different,

21   something higher.  I have no reason to think that I will

22   do that, but it's possible; and as I said before, nobody

23   can know what the final range will be until we have the

24   presentence report and a hearing is held.

25          Do you have any questions about that?

1               THE DEFENDANT:  No, Your Honor.

2               MS. RICHARDS:  Your Honor, if I may?

3               THE COURT:  Yes.

4               MS. RICHARDS:  My colleague and I were just

5     discussing this, and I think there was a small omission on

6     our part on the guideline stipulation.  It's linguistic as

7     opposed to mathematical.

8               Specifically that we had written "gain of more

9     than 3.5 million."  We'd like to just pen in ink an

10    additional "loss or gain," if that is amenable to the

11    Court and amenable to the defendant.

12              MR. GLOZMAN:  Yes, Your Honor, I believe that's

13    consistent with the guidelines, and there is no objection.

14              THE COURT:  Fine.

15              MS. RICHARDS:  So if Mr. Glozman could just pen

16    in ink that, and then have -- if he could initial it, and

17    the defendant could initial it, and the government will

18    initial that change, Your Honor.

19              THE COURT:  All right, thank you.

20              MR. GLOZMAN:  Your Honor, for the record, on

21    page 8 of the Written Plea Agreement, I've penned the

22    words "loss or" in front of the word "gain," and I penned

23    my initials to the left of that with the letters "V.G."

24    and my client, Mr. Levashov, penned his initials with the

25    letters "P.L."

1          THE COURT:  Mr. Levashov, earlier we talked

2     about the rights that you would be giving up by pleading

3     guilty, and returning to that subject, under the plea

4     agreement, you are agreeing that you will not appeal your

5     conviction or your sentence nor attack your conviction or

6     your sentence in any type of legal proceeding as long as

7     the sentence does not exceed 175 months of imprisonment, a

8     three-year term of supervised release, a $400 special

9     assessment, a $4 million fine, $1 million in restitution,

10    or forfeiture of the assets described at pages 5 and 6 of

11    the plea agreement.

12          Do you understand, sir?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  In other words, if the sentence does

15    not exceed that sentence, you will be stuck with your

16    conviction and your sentence.  You will have no right to

17    appeal.  You will have no right to attack your conviction

18    or your sentence in any way.

19          Is that understood, sir?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Are you agreeing to give up your

22    right to appeal or attack your conviction or sentence, as

23    I have just said, as part of the overall plea agreement

24    that you have reached with the government?

25          THE DEFENDANT:  Yes, Your Honor.

1              THE COURT:  Are you giving up those rights

2     voluntarily?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  After a full discussion with your

5     counsel, Mr. Glozman?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  All right.

8              In a moment, I'm going to call on you to tell me

9     what you did that makes you guilty of the charges to which

10    you propose to plead guilty.  But before I do that, I want

11    to give you an opportunity to consult privately with

12    Mr. Glozman if you wish to do so.  If you have any

13    questions or concerns or issues that you want to discuss

14    with him before we go any further, I will give you a

15    chance to do that.  If not, that's fine, we'll simply

16    proceed.  It's up to you.

17             Are you content to proceed, or would you like to

18    speak privately with Mr. Glozman?

19             MR. GLOZMAN:  One moment, Your Honor.

20                  (Pause)

21             THE DEFENDANT:  Yeah, I'm ready to proceed, Your

22    Honor.

23             THE COURT:  All right, then, please tell me what

24    you did that shows you are in fact guilty of the charges

25    against you to which you are offering to plead guilty.

 1              THE DEFENDANT:  I will use my native language if

 2    possible?

 3              THE COURT:  All right.

 4              THE INTERPRETER:  I owned and managed a botnet,

 5    Kelihos.  I used it for sending emails.  I used it for

 6    collecting electronic addresses of people without their

 7    consent.  And I also used their addresses to send emails

 8    without their consent or without their knowledge.

 9              I also distributed spam and malware, and it was

10    done on the request of the third-party.

11              That's all.

12              THE COURT:  All right.  I'm going to ask

13    Ms. Richards to tell me what the government's evidence

14    would be if the case went to trial, and I ask you to

15    please listen as she explains what the government's

16    evidence would be, all right?

17              MS. RICHARDS:  Thank you, Your Honor.

18              This is an extensive investigation conducted by

19    the New Haven field office of the Federal Bureau of

20    Investigation.  It went on for multiple years.  In the

21    course of the investigation, the FBI collected information

22    and evidence from a variety of sources that I'd like to

23    delineate for the record now.

24              Specifically, the agents were able to identify

25    various servers that served as infrastructure for the

1    Kelihos botnet.  Working with our foreign counterparts, we

2    were able to retrieve data from those servers and that

3    data led us to see, in part, the information, the

4    activities, if you will, of the defendant in running his

5    botnet, in managing his botnet and in managing the various

6    identifiers that he had and credentials that he had

7    through his botnet acquired illegally, including

8    identifiers that were specifically linked to a victim here

9    in Connecticut.

10          Agents were also able to seize data from

11   electronic and financial accounts that were associated

12   with Mr. Levashov both in his true name as well as in his

13   aliases.  They seized computers within Connecticut that

14   had been infected with Mr. Levashov's malware, they also

15   self-infected a computer within the FBI to monitor the

16   botnet and to study the botnet.

17          Through the course of doing that, that infected

18   computer became infected with additional forms of malware

19   that no one in the FBI had consented to it being infected

20   with indicating that indeed the Kelihos botnet was

21   distributing other forms of malware, such as ransomware

22   and I believe a banking Trojan.

23          In the course of not only FBI New Haven's

24   investigation, but additionally the fact that Mr. Severa

25   had been a target of the FBI for more than a decade, the

1    FBI more broadly had studied Mr. Levashov's postings as

2    Mr. Severa, or his aliases, Severa, Peter Severa, on

3    various criminal forums.

4           The FBI in New Haven obtained those postings as

5    well in which Mr. Levashov blatantly and clearly stated

6    what he did.  And what he did, was in part to sell his

7    services to people who wanted to distribute spam and other

8    malware.

9           Additionally, at the conclusion of this case,

10   the law enforcement officers, the FBI in New Haven,

11   engaged in an undercover conversation with Mr. Levashov

12   while he was in Spain, and specifically ordered a spam

13   campaign from Mr. Levashov, which Mr. Levashov did in fact

14   distribute.

15          And then finally, at the time of his arrest in

16   Spain, law enforcement officers, specifically again the

17   FBI in New Haven, collected and seized, working with the

18   Spanish National Police, a series of electronic media

19   belonging to Mr. Levashov; and the data retrieved from

20   that further indicated that he was in fact the person

21   running the Kelihos botnet.

22          All of that evidence has led to where we are

23   here today and to what the government would be able to

24   prove at trial, which is as follows:

25          That since the late 1990's until his arrest on

1    April 7, 2017, the defendant, Peter Levashov, operated

2    botnets under various aliases, most notably Peter Severa.

3    His botnets, which included The Storm, Waledac and Kelihos

4    botnets, harvested personal information and means of

5    identification, including email addresses, user names and

6    log-ins and passwords from infected computers,

7    disseminated spam, and distributed malware including

8    Trojans and ransomware.

9         Over the course of his criminal career, Levashov

10    participated in and moderated various online criminal

11    forums on which stolen identities and credit cards,

12    malware and other criminal tools of cyber crime were

13    traded and sold.

14         In so doing, Levashov used, among other online

15    identifiers, ICQ Number 104967, Jabber@honese.com, and

16    Peter@Severa.biz to chat and communicate with others

17    online.

18         Levashov controlled and operated the Kelihos

19    botnet through command and control servers which enabled

20    him to issue commands to any and all computers infected

21    with the Kelihos malware.  He operated the Kelihos botnet

22    through, among other means, a virtual private network, or

23    VPN, connection or proxy -- and proxy, multiple servers,

24    distributed among multiple countries and the servers known

25    as bulletproof hosts.

1           In so doing, Levashov advertised his botnet

2    services on various online forums and customers would pay

3    him to distribute spam and ransomware, he also included

4    and paid affiliates to disseminate the Kelihos botnet by

5    infecting protected computers.

6           And just for ease of the court reporter

7    following along, this is on -- this is actually the

8    stipulation of offense conduct at page 15.

9           Levashov and his co-conspirators knew that the

10   Kelihos botnet would, among other things, access infected

11   computers to harvest thousands of credentials that were

12   then used by the botnet to send spam.  Among the spam that

13   Levashov sent through the Kelihos botnet was spam

14   containing links to websites that would infect the

15   computer with ransomware.

16          Levashov monitored the stability and the

17   efficacy of the Kelihos botnet through an online

18   dashboard.

19          In furtherance of the conspiracy and to affect

20   the objects of a conspiracy, Levashov and his

21   co-conspirators committed and caused to be committed the

22   following overt acts, among others, in the district of

23   Connecticut and elsewhere.

24          On March 2, 2016, Levashov sent an email from

25   Peter@Severa.biz to a customer stating that mailing costs

1    500 USD per one mil emails, 750 USD per two mil, 1K per

2    three mil.

3            From May 5, 2016, to May 9, 2016, Levashov

4    assessed a WebMoney account associated with WebMoney

5    identifier ending in 4986.  With this account -- within

6    this account was a WebMoney purse ending in 1018 into

7    which his clients deposited payments for his criminal

8    services.

9            Levashov has, on occasion, accessed this account

10   from a computer with an internet protocol address

11   91.122.62.16, which is the IP addressed assigned to the

12   defendant's home WiFi service.

13           On September 22, 2016, Levashov disseminated the

14   JokeFromMars ransomware via the Kelihos botnet to more

15   than ten computers.

16           From October 1, 2016 until December 8, 2016,

17   Levashov accessed a computer service with the IP address

18   of 85.17.31.90, which was the IP address assigned to his

19   VPN at the time.

20           On December 15, 2016, Kelihos harvested

21   credentials from a file transfer protocol, an internet

22   service which is used to transfer files from one computer

23   to another client from a computer in Connecticut.

24           On March 21, 2017, Levashov instructed a

25   customer for a spam campaign to pay him by bitcoin and

1    stated that he charges $300 per 1,000,000 emails but more

2    for phishing and other scams.

3         Some of the spam that Levashov distributed

4    contained advertisements in furtherance of what is known

5    as bump and dump schemes which sought to boost the price

6    of various stocks through recommendations based on false

7    statements.

8         For example, on March 22, 2017, for the purpose

9    of executing and attempting to execute a pump and dump

10   scheme and with the intent to defraud, Levashov caused a

11   wire to be sent via a chat platform from outside of

12   Connecticut to an individual in Connecticut.

13        On or about July 15, 2016, and during and in

14   relation to the intentional damage to a protected computer

15   charged in Count One and the wire fraud charged in

16   Count Four, Levashov possessed and used the email address

17   and user name and password of a real person, Victim SB,

18   who resided in Connecticut, in order to send spam as part

19   of the Kelihos botnet.

20        Victim SB did not authorize Levashov's use of

21   her email address and password.

22        The computers infected as part of any and all

23   criminal activity associated with the Kelihos botnet were

24   used in and affecting interstate and foreign commerce and

25   communication.  Levashov and his co-conspirators did not

1    seek, nor were they given, permission to install the

2    Kelihos botnet on victims' computers or to use the

3    victims' computers as part of the Kelihos botnet.

4          At the time of Levashov's arrest, Kelihos

5    infected at least 50,000 computers.  The parties stipulate

6    and agree that it would cost as much as $149 per computer

7    to remove the Kelihos virus from each infected computer.

8          The defendant also agrees that the unlawful gain

9    from the criminal conduct described above exceeds

10   $3.5 million.

11          THE COURT:  Thank you.

12          Mr. Glozman, I take it for granted that the

13   stipulation of offense conduct was reached after careful

14   discussion with Mr. Levashov?

15          MR. GLOZMAN:  Yes, Your Honor.  And just so Your

16   Honor and the record is clear, the stipulation that

17   Mr. Levashov is entering into as to the facts are only the

18   facts contained in this plea agreement.

19          Ms. Richards outlined certain techniques and

20   tactics used by investigating agencies in the United

21   States Attorney's Office and bring an arrest and an

22   indictment to Mr. Levashov.

23          He was not privy to any of this and he's not

24   stipulating to anything that Ms. Richards said as it

25   relates to that, and he is only stipulating to those facts

1    that we agreed to within the written submission to this

2    Court.

3            THE COURT:  All right.

4            Mr. Levashov, addressing you directly, can you

5    confirm that in fact you discussed with Mr. Glozman what

6    you did during this time period, that is from the late

7    1990's until your arrest in April of 2017?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  And the facts that are contained in

10   this stipulation concerning what you did are true?

11           THE DEFENDANT:  Yes, Your Honor.

12           THE COURT:  Is there anything in the stipulation

13   concerning your own conduct with which you disagree?  In

14   other words, anything that you think is inaccurate?

15           THE DEFENDANT:  No, Your Honor.

16           THE COURT:  Has the plea agreement been signed?

17           MR. GLOZMAN:  Not yet, Your Honor.  We'll sign

18   it in open court.

19           MS. RICHARDS:  It hasn't, Your Honor.

20           Before you proceed to that point, if it's

21   appropriate?

22           THE COURT:  Yes?

23           MS. RICHARDS:  There are just a few things in

24   the written plea agreement that I'd like just to note for

25   the record.

1              THE COURT:  Yes.

2              MS. RICHARDS:  Most notably, I just want to say

3    that most of the things that Your Honor went through in

4    court today are actually memorialized in writing herein,

5    both in terms of the sentencing guideline applicability,

6    the various rights that the defendant has and how he would

7    be waiving them.

8              I want to note a few things, both with respect

9    to the waiver of his right to challenge his conviction as

10   well as the waiver of his right to challenges his appeal

11   or collaterally attack his sentence, which are two

12   different things.

13             That with respect to both, he does reserve

14   certain rights.

15             Neither waiver would preclude him from raising a

16   claim of ineffective assistance of counsel in a particular

17   form, and I just want to make sure he understands that.

18             I also want to note that this plea agreement

19   contains another right that he is waiving, and it's

20   delineated on page 12 of the agreement.

21             That paragraph that exists under the heading

22   Waiver of Right to Discovery, it lays out that the

23   defendant understands that he's accepted this agreement

24   and decided to plead guilty because he is in fact guilty,

25   as Your Honor has gone through with him, but that by then

```
1    entering the plea of guilty, he's waiving any and all
2    right to withdraw his plea or attack his conviction either
3    on direct appeal or collaterally on the ground that the
4    government has failed to produce any discovery material,
5    Jencks Act material, exculpatory material or other
6    information establishing the factual innocence of the
7    defendant or impeachment material pursuant to Giglio that
8    has not already been produced as of the date of the
9    signing of the agreement.
10            THE COURT:  As I read this, I wasn't sure what
11   line was being drawn.  I appreciate your focusing our
12   attention on this paragraph.
13            By its terms, it states that Mr. Levashov is
14   waiving any right to withdraw his plea or attack his
15   conviction in any way, shape or form on the ground that
16   the government failed to produce discovery material,
17   Jencks Act material, or exculpatory material under the
18   Brady case other than information establishing his factual
19   innocence or impeachment material pursuant to the Giglio
20   case that has not already been produced.
21            Does this mean that if the government has
22   withheld information establishing his factual innocence
23   that he could appeal on that basis?
24            MS. RICHARDS:  I think what this provision is
25   designed to do, is to be clear that there is the potential
```

1    of -- as I had mentioned before, it was a significantly

2    long investigation.  With respect to the information that

3    forms the basis of this plea, the government has provided

4    defense counsel with that information in discovery.

5              In terms of -- the reality is there is more

6    information that if we were to continue and proceed to

7    trial, there would be potentially more litigation as well

8    as more disclosures.

9              The defendant in this agreement is essentially

10   saying I'm foregoing that at this point, basically I've

11   seen everything I need to see to suggest that essentially

12   this is going to be a slam dunk case against me and I'm

13   not going to be arguing subsequently, hey, I didn't get

14   the entire universe of discovery that exists in this case

15   and that should be a ground for my plea agreement.

16             THE COURT:  That is your understanding,

17   Mr. Glozman?

18             MR. GLOZMAN:  Yes, Your Honor.

19             And so the government has been in compliance

20   with an obligations under Rule 16 thus far, Your Honor.

21   It's my understanding of the laws that a lot of the

22   exculpatory materials do not get produced until the eve of

23   trial or close to it.

24             It is, based on what we've stated earlier, it is

25   Mr. Levashov's intention to enter a plea of guilty and it

1      is not his intention in the future to attack this plea or

2      the validity of it for not receiving any of the Brady or

3      Giglio materials that would be produced had we gone to

4      trial.

5              But just so it's clear, the government has been

6      in compliance thus far with its obligations.

7              MS. RICHARDS:  And I'd like to put on the

8      record, Your Honor, the government, to the extent that

9      there was any exculpatory information in this case,

10     obviously the government is very aware of the fact that

11     its obligations under Brady is the moment that we come

12     upon it, it's our obligation to hand it over to the

13     defense, and we would always comply with that.

14             So any even potentially exculpatory information

15     in this case of which -- candidly, there is none that I

16     would qualify as Brady -- has been turned over.

17             My only point is that there are terabytes and

18     terabytes of information in this case and we've sort of

19     come this far in terms of disclosure.

20             My understanding -- and I want to be clear about

21     this as well in terms of what Mr. Glozman said -- we have

22     complied with our Rule 16, which again is much of what

23     forms the basis of the Stipulation of Offense Conduct, so

24     the defendant's statements, things along those lines, we

25     have made them available to the defense and we produced

1    them to the defense, just so that part is very clear on

2    the record.

3              The government has no reason to believe at this

4    point in time that there is some cache of exculpatory

5    evidence that we are just sitting on.  That's not the

6    situation.

7              THE COURT:  All right.  Then let me make a

8    suggestion.

9              Focusing on this paragraph, it seems to me that

10   the paragraph should be revised as follows:  After the

11   words "Brady against Maryland" with the citation, the

12   words "other than" should be revised to read "in other

13   words."

14             MR. GLOZMAN:  Would Your Honor like us to

15   initial again?

16             THE COURT:  Yes.

17             MS. RICHARDS:  So, Your Honor, you would have it

18   read, "Pursuant to Brady v. Maryland, in other words,

19   information establishing the factual innocence of the

20   defendant, or impeachment material that was not already

21   produced as of the date"?

22             THE COURT:  Yes.

23             "In other words, information establishing," and

24   then continuing on as it is, making it clear that what

25   you're doing there is you're defining Brady material.

```
 1        You're not carving out Brady material that would give the
 2        defendant a basis for appeal if it were withheld.
 3               MR. GLOZMAN:  And, Your Honor, for the record in
 4        the written plea agreement, I've put two strikes through
 5        the words "other than."  I've penned in the words "in
 6        other words."  And under that I've initialed with my
 7        initials "V.G." and Mr. Levashov has initialed with his
 8        initials "P.L."
 9               THE COURT:  Very good, thank you, I think that
10        helps.
11               All right then, unless anybody has anything else
12        they would like to discuss, I would call on the parties to
13        sign the plea agreement at this time.
14               MS. RICHARDS:  Your Honor, if we could just have
15        a moment to consider Your Honor's edit from the
16        government's perspective?
17               THE COURT:  Maybe I'm missing something, but I
18        think that the change is necessary to avoid what would be
19        a significant error, but I could be wrong.
20               I don't understand you to be saying that the
21        government wants the defendant to be able to appeal if he
22        can show that exculpatory information was withheld, in
23        other words, information establishing his factual
24        innocence.  I understand you to be saying the opposite,
25        that he has no right to appeal even if such material was
```

1    withheld.  That's why I have the problem with the words

2    "other than."

3              Do you see?

4              MS. RICHARDS:  I see, Your Honor.

5              THE COURT:  Okay, good.

6              MS. RICHARDS:  Thank you.

7              THE COURT:  Then we'll have the signed original

8    handed up, please.

9                   (Pause)

10              THE COURT:  Mr. Levashov, based on everything

11   that I have seen and heard, it appears to me that you

12   would like to change your plea to a plea of guilty with

13   regard to these four counts of the indictment because you

14   are in fact guilty and you think that changing your plea

15   is the best thing you can do in the circumstances, and you

16   choose to plead guilty freely and voluntarily after full

17   consultation with Mr. Glozman regarding the factual basis

18   for the plea and the alternatives available to you.

19              Is that right, sir?

20              THE DEFENDANT:  Indeed, Your Honor.

21              THE COURT:  All right, then, at this time I'm

22   going to ask the clerk to read the charges, unless you

23   waive a reading of the charges.  It's up to you.

24              MR. GLOZMAN:  We'll waive the reading of the

25   charges.  I've explained the charges to Mr. Levashov,

1    specifically the ones he is pleading guilty to.

2               THE COURT:  All right.

3               MR. GLOZMAN:  And he understands the nature of

4    them.

5               THE COURT:  Then, Mr. Levashov, would you please

6    stand at this time?  The clerk will take your plea now.

7               THE CLERK:  In the case of United States of

8    America v. Peter Yuryevich Levashov, Case

9    Number 3:17CR83(RNC), as to Count One of the indictment

10   charging you with a violation of Title 18 United States

11   Code Sections 1030(a)(5)(A) and (c)(4)(B) and Section 2,

12   how do you plead?

13              THE DEFENDANT:  Guilty.

14              THE CLERK:  As to Count Two of the indictment

15   charging you with a violation of Title 18 United States

16   Code Section 371, how do you plead?

17              THE DEFENDANT:  Guilty.

18              THE CLERK:  As to Count Four of the indictment

19   charging you with a violation of Title 18 United States

20   Code Sections 1343 and Section 2, how do you plead?

21              THE DEFENDANT:  Guilty.

22              THE CLERK:  As to Count Eight of the indictment

23   charging you with a violation of Title 18 United States

24   Code Sections 1028A and 2, how do you plead?

25              THE DEFENDANT:  Guilty.

1           THE CLERK:  Your Honor the defendant has pled

2     guilty to Counts One, Two, Four and Eight of the

3     indictment.

4           THE COURT:  All right.  On the basis of

5     Mr. Levashov's statements here in open court, the remarks

6     of his counsel and counsel for the government, I make the

7     following findings:

8           First, that Mr. Levashov is fully competent and

9     capable of entering an informed plea; next, that he

10    understands the nature of each of these charges; next,

11    that he knows and understands his right to a jury trial

12    and the other rights that we talked about; next that he

13    knows and understands the possible consequences of a plea

14    of guilty to these charges; next that he has chosen to

15    plead guilty to each of these charges because he is in

16    fact guilty; and finally, that his plea of guilty as to

17    each charge is a knowing and voluntary plea supported by

18    an adequate factual basis as to each of the essential

19    elements of the charge.

20          Therefore, Mr. Levashov's plea of guilty to each

21    of these charges is accepted by the Court.  A finding of

22    guilty as to each of these four charges will enter on the

23    record of the case and the case will be referred to the

24    probation office for a presentence investigation and

25    preparation of a presentence report.

1          Please be seated.

2          Mr. Levashov, at some point in time the

3    probation office will want to sit down with you in

4    connection with preparing the presentence report that I

5    described earlier.  It will be the responsibility of the

6    probation office to prepare a report that sets out the

7    details of the offenses to which you have pleaded guilty

8    as well as information concerning your personal

9    background, including information relating to your family

10   background, your employment history, your education, your

11   health, and other matters that will be relevant to the

12   sentencing determination.

13          You will want to prepare for that meeting and

14   you will want to be assisted by Mr. Glozman in connection

15   with that meeting.  The probation office will subsequently

16   provide you with a draft of the presentence report and you

17   and Mr. Glozman will want to review it very carefully to

18   be sure that it's accurate and complete.

19          If you see anything that is inaccurate, you need

20   to be sure to bring that to the attention of Mr. Glozman

21   so that he can bring it to the attention of the probation

22   office.  We want the report to be accurate.

23          Also if there are any matters that you want to

24   see added to the report, please tell Mr. Glozman so that

25   he can tell the probation office.  We want the report to

1    be complete.

2           The government will also have an opportunity to

3    review the draft of the report and make any objections or

4    other comments that it would like to make, and then the

5    probation officer will prepare a final report which will

6    be given to me.  That report will be an important part of

7    the process leading to the sentencing hearing.

8           There will be a hearing, and at that time you

9    and the government will be able to make whatever

10   presentations you wish with regard to what you think the

11   sentence should be.  Remember, the sentence ultimately is

12   supposed to be sufficient without being harsher than

13   necessary to serve those purposes that I told you about.

14          At the hearing, you will have an opportunity to

15   ask people to speak on your own behalf if you wish to do

16   so.  You have no obligation to do that.  You will also

17   have an opportunity to speak on your own behalf if you

18   want to.  Again, you have no obligation to say anything,

19   but at the hearing you will have a chance to speak on your

20   own behalf if you would like to do so.

21          With regard to release pending sentencing?

22          MS. RICHARDS:  Your Honor, at this point, given

23   the fact that -- I don't think there's any dispute that

24   the defendant should remain in custody.  As we've

25   discussed, he's not an American, so the flight risk is

1    significant.

2              Before we continue, Your Honor -- do you --

3    let's resolve the issue of bond and then I can raise my

4    other concern.

5              MR. GLOZMAN:  For right now, Judge, there's no

6    issue as to bond.

7              THE COURT:  All right.  So by agreement of the

8    parties, Mr. Levashov, you will continue to be detained,

9    pending the sentencing hearing.  Until such time, if ever,

10   that an application is made for release, you will remain

11   detained.

12             MS. RICHARDS:  Your Honor, I just -- I'd like to

13   just revisit the written plea agreement before we file it

14   and revisit that paragraph on page 12.

15             I actually, upon further thought, really believe

16   that the original language should remain, and I'd like to

17   just explain why.

18             As Your Honor is well aware, our obligations

19   under Brady are quite broad.  It is essentially any

20   evidence that would be of value to a defense case.

21             Within that orbit is the idea separately of

22   factual innocence.  So you can have a broad spectrum of

23   what might be considered Brady, but probably the most

24   extreme of it is an actual evidence of factual innocence.

25             What the intent of this paragraph was designed

1    to say is that the defendant is waiving his right to

2    Rule 16 discovery, he's waiving his right to that which

3    might be viewed as beneficial, quote-unquote, to the

4    defense or Giglio or Jencks, except where you're talking

5    about factual innocence.

6                    THE COURT:  Okay.  So --

7                    MS. RICHARDS:  So what we've done here, if we

8    changed it -- so in other words, should there come a point

9    in time -- just so the record is clear -- should there

10   come a point in time down the road that Mr. Levashov finds

11   out the government was sitting on a document that said

12   "Peter Levashov is completely innocent, he's never had

13   anything to do with the crime," and we failed to turn that

14   over, he would absolutely have a basis to challenge this

15   plea because that's evidence of his factual innocence as

16   opposed to something that might just generally benefit the

17   defense, which are -- again I think Brady is broader than

18   that.

19          So what this is doing is trying to say he is

20   waiving his rights with the exception of establishing

21   evidence that establishes factual innocence of the

22   defendant, that that is a carve out, hence the language,

23   "other than information establishing the factual innocence

24   of the defendant," as opposed to "in other words."

25                   THE COURT:  Well, the two are quite different,

1    and whatever the agreement is, we need to be sure that it

2    is clearly stated.

3            If the agreement is that there is what you refer

4    to as a carve out, and that carve out is information

5    establishing the factual innocence of the defendant, then

6    that's fine with me, of course.

7            At that point -- and I'm not here to quibble --

8    but a natural reading of the language is that this carve

9    out is broader, it encompasses also impeachment material,

10   and I don't think you mean to include that in the carve

11   out.

12           MS. RICHARDS:  I think we do, Your Honor.

13           THE COURT:  You do mean to include it?

14           Then really there's no Brady waiver at all.  I

15   mean, that's a definition of Brady.  Information that

16   establishes factual innocence or is impeachment material.

17   That's Brady.  So there's really no Brady carve out.

18           Mr. Glozman pointed out that under current law,

19   it's not clear that the defendant has a right to

20   disclosure of Brady material in connection with a change

21   of plea, but again, I'm happy to have you make whatever

22   agreement you would like as permitted by the law just so

23   long as you're clear.

24           If what you mean to say is that your failure to

25   comply with Brady provides Mr. Levashov with a basis for

1      an appeal or a collateral attack, then I think that's what

2      this says.

3                  MS. RICHARDS:  Your Honor, if it would be

4      appropriate, I would like a moment just to consult about

5      this.

6                  THE COURT:  All right.

7                  MS. RICHARDS:  I want to make sure the record is

8      clear.

9                  THE COURT:  Okay.  Why don't we do this:  We're

10     going to be taking a lunch break and I can come back after

11     lunch and you can tell me what you want me to do.

12                 MS. RICHARDS:  I think we only need five

13     minutes, Your Honor.

14                 THE COURT:  All right.  You want me to stand by?

15                 MS. RICHARDS:  If you wouldn't mind.

16                 THE COURT:  We'll take a recess pending

17     clarification of this aspect of the agreement.

18                 MS. RICHARDS:  Thank you, Your Honor.

19                 MR. GLOZMAN:  Thank you, Judge.  I just want to

20     make sure I don't miss my flight out after.

21                 THE COURT:  When is that?

22                 MR. GLOZMAN:  Boarding is at 3:00.

23                 THE COURT:  We're taking a short recess and you

24     should be able to make your flight with no problem.

25                 Okay, we'll be in recess.

1                    (Whereupon, a recess followed)

2                    THE COURT:  All set?

3                    MS. RICHARDS:  Yeah, thank you, Your Honor.

4               Just to make the record hopefully clearer, the

5     government, upon consultation with colleagues, agrees with

6     Your Honor's change, and just so that the record is clear.

7     First and foremost just so everybody understands, he's

8     waiving his right to discovery with respect to his guilty

9     plea.  Obviously to the extent that there is material that

10    may be germane to sentencing, this waiver doesn't include

11    that.

12              Brady is obviously to punishment and to guilt

13    and this is really about his guilt.

14              And just so that the record is clear, the

15    government -- to the extent the government has undertaken

16    its review of evidence in this case, that which it has

17    reviewed, that to be discoverable under Rule 16 and to be

18    discoverable under Giglio and Brady, it has disclosed to

19    the defense.

20              But, as I mentioned before, there's a

21    significant amount of evidence in this case and what's

22    happening here in this provision is the defendant

23    understands it would be incredibly time consuming for the

24    government to engage in a review of that additional

25    evidence, and that given what he has received thus far, he

1    is ready to waive his rights with respect to that review

2    and proceed forward.

3              MR. GLOZMAN:  That's right, Judge, I agree with

4    Ms. Richards.

5              THE COURT:  All right, that makes sense.  I

6    think that's fair and reasonable.

7              MS. RICHARDS:  And so, Your Honor, in light of

8    that, the parties at this point are prepared to hand up

9    the fully executed plea, if I may.

10             THE COURT:  Thank you very much.

11             We have tentatively scheduled this case for

12   sentencing November 16 at 10:00 a.m.

13             MR. GLOZMAN:  Your Honor, respectfully, and I've

14   addressed this with the government, if we could get an

15   extended sentencing date significantly past that for two

16   reasons, one being we're still in dispute with the

17   government about certain issues, some of which are

18   outlined in the written plea as they relate to the

19   Sentencing Guidelines.  Another one is we're contemplating

20   calling some character witnesses during the sentencing,

21   all of whom live abroad, and there is a long and drawn out

22   process for obtaining visas for those people to come here.

23             I believe, given the guideline range in this

24   case, that it's not unreasonable to maybe set something a

25   year from now so that to allow us to hopefully work out

1    the differences with the government, if not, prepare to

2    litigate them before Your Honor, and also give us an

3    opportunity to get witnesses to have them come here and to

4    be able to testify as to Mr. Levashov's character, which I

5    believe is directly relevant to Your Honor's

6    considerations under 3553(a).

7                 THE COURT:  All right.  Any comments?

8                 MS. RICHARDS:  No, Your Honor, the government

9    doesn't have any objection.

10                THE COURT:  All right.  Well, I think in the

11   circumstances, the suggested postponement makes sense.  I

12   don't know what's involved in getting character witnesses

13   here from abroad, but I know it can be time consuming.

14                MR. GLOZMAN:  Yes, Your Honor, the application

15   process and approval process is what takes the longest.

16                THE COURT:  All right.  Well, why don't we

17   select a date that will be a place holder, so to speak, on

18   the understanding that a further continuance is

19   potentially necessary, and why don't we select a date

20   sometime in the second half of next year.

21                I will ask counsel to confer with each other and

22   our clerk in identifying a date that would seem to make

23   sense, and then we'll have that date in place on the

24   understanding that if it needs to be changed, it can be.

25                If it should turn out that the process of

1    resolving those disputed matters and getting character

2    witnesses here is not as time consuming as Mr. Glozman

3    anticipated, we could actually move the date up, but I

4    think it's good to have a date.

5            MR. GLOZMAN:  I agree, Your Honor.  And I don't

6    know about the government's schedule or Your Honor's, but

7    as of now, any day in August or September of next year I'm

8    fine with.

9            MS. RICHARDS:  Agreed, Your Honor.

10           THE COURT:  Okay, all right.  Then why don't we

11   pick a Friday in September.

12           THE CLERK:  How about September 6?

13           THE COURT:  That would be fine.

14           As that day approaches, we'll simply need to be

15   sure that the presentence report has been done and I'll

16   ask the clerk to communicate with the Probation Office

17   about this situation, okay?

18           Anything further for now?

19           MR. GLOZMAN:  Nothing from the defense, Your

20   Honor.

21           MS. RICHARDS:  No, Your Honor, thank you.

22           THE COURT:  All right, thank you.

23               (Proceedings adjourned at 1:32 p.m.)

24

25

1                     C E R T I F I C A T E

2

3                     In Re: U.S. vs. LEVASHOV

4

5

6           I, Darlene A. Warner, RDR-CRR, Official Court

7     Reporter for the United States District Court for the

8     District of Connecticut, do hereby certify that the

9     foregoing pages are a true and accurate transcription of

10    my shorthand notes taken in the aforementioned matter to

11    the best of my skill and ability.

12

13

14

15
                      /s/_____
16
                         DARLENE A. WARNER, RDR-CRR
17                        Official Court Reporter
                         450 Main Street, Room #223
18                       Hartford, Connecticut 06103
                            (860) 547-0580
19

20

21

22

23

24

25