## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>V.<br><br>**PETER YURYEVIC LEVASHOV.**<br>*a/k/a* Peter Severa | **17-CR-00083-RNC**<br>**CVRA ENFORCMENT MOTION**<br>FOR A SCHEDULING ORDER CLARIFYING AND IF NEED BE ENLARGING TIME FOR MOVANT TO FILE A MOTION TO ENFORCE CVRA RIGHTS HE CLAIMS AS A VICTIM OR IN THE ALTERNATIVE ACCEPTING THIS FILING AS SUCH MOTION PER §§ 3664, 3771 |

## INTRODUCTION

The Crime Victims Rights Act, 18 U.S.C. § 3771, provides those victims of certain crimes, including the crime(s) of conviction, in this case, an enforcement mechanism by which they may initiate by motion in the sentencing Court recognition of their standing to assert such rights.

Among those rights are the expectation that the government will treat the victim movants with respect and will consult with them, as well as the right to restitution as otherwise provided by law.

The Mandatory Victim Restitution Act is such "other provision," 18 U.S.C. § 3664, 3664A making mandatory a sentencing award of restitution to all victims of criminal schemes if the defendant was convicted of participating, operating, or facilitating such a scheme, even if the victim's injury predates the offense of conviction, so long as the causal act was part or in furtherance of the scheme.

§ 3664 allows a sentencing court to delay imposition of restitution for 90 days past the "date of sentencing." It *seems* clear, but there is no defined "date of sentencing" and as a  federal custodial sentence, for example, does not begin until delivery of the defendant to the custody of the Bureau of Prisons; one may presume a sentence of supervised release, as imposed here, does not begin until such liberty restrictions begin; in either case, it could not be before entry of the judgment and commitment order, which in this case was August 8, 2021. That entry makes decretal the 90-day delay imposed by the Court without reference to the July 20, 2021 hearing. It suggests this 90-day period expires on November 8, 2021. However, while that is on a Monday and is actually 91 days, one could argue an enlargement past the 90th calendar day from the hearing date would be *ultra vires*. That would be error.

Ten years ago, in *United States v. Dolan*, on all fours, the Supreme Court that the 90 day period in question was not jurisdictional and that at least where, as there, the sentencing court had no later than the sentencing hearing made clear its intention to continue to determine and as required in time order restitution, in that case ordering it far past the 90 days, there was no violation of statute nor was there any violation of the defendant's rights. Of course, your honor made such a pronouncement in the hearing here back on July 20, 2021, removing the 90 days as other than a non-jurisdictional rule which can be amended for good cause or excusable neglect or the like.[1]

Therefore, I submit this as a properly made ex parte letter form request that the Court clarify or enlarge that the time to submit any CVRA enforcement motion be 30 days, November 17, 2021. The basis for same is clear: It is the government's obligation to establish to the court's satisfaction the list of victims' names and the amounts it believes represent compensable loss. It is the Court's duty then to conduct a victim status and loss inquest entirely separate from any that may have been done for guidelines purposes..[2] Furthermore, it is the government's obligation, and not the victims', to come

---

[1] *See also* fn. 3 , *infra*.

[2] *United States v. Binkholder*, --- F.3d ---, No. 15-2125, 2016 WL 4254938 (CA 8 2016).

Defendant pled guilty to four counts of wire fraud and appealed his sentence, arguing, *inter alia*, that the trial court erred in finding that an individual known as M.U. was a victim for purposes of applying the federal Sentencing Guidelines. In the plea agreement, the government and defendant expressly disagreed regarding whether M.U. was a victim. Following the submission of the plea agreement, the district court held an evidentiary hearing and, after additional briefing, issued a written decision finding that M.U. was not a victim but was instead "a sophisticated businessperson who was complicit in [defendant's] scheme, and the mere fact that he lost money as a result of his involvement with [defendant] was insufficient to make him a victim." M.U. then filed a motion with the district court asking that he be recognized as a victim pursuant to the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771. M.U.'s motion was denied by the trial court, and he sought a writ of mandamus asking the Eighth Circuit to order the district court to vacate its prior decision and recognize M.U. as a victim pursuant to the CVRA. M.U.'s petition for a writ of mandamus was granted, and the district court subsequently found that M.U. was a victim under the CVRA. On appeal, defendant argued that the district court inappropriately conflated M.U.'s victim status under the CVRA with his victim status under the Sentencing Guidelines, finding the former to be dispositive of the latter. The Eighth Circuit clarified that the CVRA and the Sentencing Guidelines serve different purposes and incorporate different definitions of victim and, although the two definitions are similar, they are "not necessarily coextensive."

The two inquiries are distinct and, consequently, the trial court is required to make two separate determinations regarding victim status. Because the district court did not conduct a separate inquiry regarding the victim status of M.U. under the Sentencing Guidelines, the Court of Appeals reversed and remanded "so that the district court may determine in the first instance whether M.U. was a victim under the Guidelines and, if necessary, proceed to resentencing."

2

forward to court with the evidence of victim identity and loss. Obviously that would normally require that the government reach out to such victims as it finds (or as here find it through the large case notification mechanism), then interview them and review their data, in this case presumably including trading records and other sensitive data that would normally be properly subject to protective order at least prior to their use in Court as evidence, and possibly even then.

For example in *United States v. Gushlak,* Judge Garaufis, after (on an earlier transcript) criticizing the government for not having found any victims, ordering them to do so and the government then took delivery of those victims' loss documents (trading records) rather than have them delivered to the court, which is not expected in the process unless there has to be a motion to compel recognition after the government declines to recognize the victim or his loss on such review.[3]

---

[3] ***United States v. Gushlak,* 2011 U.S. Dist. LEXIS 3864**

**MEMORANDUM & ORDER**

NICHOLAS G. GARAUFIS, United States District Judge.

**I. BACKGROUND**

On November 18, 2010 the court imposed on Defendant Myron Gushlak ("Gushlak") a sentence of 72 months in the custody of the Attorney General and a $25 million fine, and stated that it would enter an order of restitution within 90 days of sentencing pursuant to 18 U.S.C. § 3664(d)(5). On December 20, 2010, the Government submitted a letter to the court in which it indicated that, based on its review of the records of trades made by holders of GlobalNet stock, Defendant owes restitution to the victims of his fraud in the amount of $20,468,876.29. (Gov't Restitution Letter (Docket Entry # 21) at 1.) The Government submitted those trading records under separate cover to defense counsel, but not to the court. (GlobalNet Trading Records Cover Letter of Dec. 20, 2010 (Docket Entry # 20).) The Government sent a second set of trading records to Defendant in a second letter, dated January 10, 2011, but did not send those records to the court either. (Rich Earth Trading Records Cover Letter of Jan. 10, 2011 (Docket Entry # 23).) Relying on United States v. Catoggio, 326 F.3d 323, 328 (2d Cir. 2003), the Government argues that the court may rely on the trading records to determine the amount of loss suffered by the victims of Defendant's crimes because the records identify the victims of Defendant's fraud and their respective losses. (Gov't Restitution Letter at 2.)

Defendant argues the court should follow Judge Gleeson's decision in the case of Howard Appel, Defendant's coconspirator in the GlobalNet fraud, to calculate the amount of restitution using only the amount of loss suffered by victims who submitted affidavits of loss. (Def.'s Letter of Jan. 3, 2011; Def.'s Letter of Jan. 7, 2011; see also Order, United States v. Appel, 04-CR-505 (JG) (E.D.N.Y. May 20, 2008).) Defendant contends that the doctrine [*3] of collateral estoppel should bar the Government from re-litigating the amount of pecuniary loss suffered by the victims of the GlobalNet stock fraud conspiracy previously determined by Judge Gleeson in Appel. (Def.'s Letter of Jan. 7, 2011 at 2.) Because Defendant was not a party to the Government's prosecution of Mr. Appel, Defendant asks the court to apply the doctrine of nonmutual collateral estoppel against the Government. In the alternative, Defendant argues that the Government has miscalculated the amount of pecuniary loss attributable to the victims of Defendant's crimes based on the Government's own trading records. (Id. at 2-3.) In support of this argument Defendant offers the opinion of a putative expert that the Government has miscalculated the amount of pecuniary loss (id. Ex. A), and provides a side-by-side comparison of the Government's alleged amounts of loss with what the putative expert alleges to be the correct calculation of the amount of loss (id. Ex. B).

**II. DISCUSSION**

3

## A. Nonmutual Collateral Estoppel

Defendant has not cited any case on point for the proposition that, "the Government should be estopped from attributing to him an amount of loss any greater than the amounts previously found by the district court in his coconspirator['s] case[]." United States v. Pierce, 409 F.3d 228, 233-34 (4th Cir. 2005). The Fourth, Fifth, Eighth, Ninth, and Eleventh Circuit Courts of Appeal have determined "that the civil doctrine of nonmutual collateral estoppel has no application in criminal sentencing." See id.; United States v. Montes, 976 F.2d 235, 239-240 (5th Cir. 1992); United States v. Wood, 22 F. App'x 668, 668 (8th Cir. 2001); United States v. Elfand, 1 F. App'x 650, 653 (9th Cir. 2001); Demar v. United States, 228 F. App'x 940, 949 (11th Cir. 2007).

In similar cases, the Second Circuit has strongly suggested that it would reach the same result. In United States v. United States Currency in the Amount of $119,984, 304 F.3d 165 (2d Cir. 2002), the Second Circuit reversed the district court's grant of summary judgment for the claimant in a civil forfeiture proceeding based on the district court's finding during the claimant's prior criminal sentencing proceeding that the funds allegedly subject to forfeiture were derived from a lawful source. The Court of Appeals reiterated its holding that "'precluding relitigation on the basis of [sentencing] findings should be presumed improper.'" Id. at 172 (quoting SEC v. Monarch Funding Corp., 192 F.3d 295, 306 (2d Cir. 1999)). Consequently, Defendant may not use Judge Gleeson's sentencing findings in Appel to preclude the Government from relitigating the amount of pecuniary loss to the same group of victims in this case.

...Defendant appears to argue that the Government should be precluded from relitigating what he assumes were Judge Gleeson's *legal* conclusions in deciding not to permit the Government to rely on trading records under Catoggio. (Def.'s Letter Jan. 3, 2011 at 1.) While the court is not bound by Judge Gleeson's interpretation of the law in a prior case, it may rely on his reasoning as persuasive authority. The court's review of the public docket in Appel reveals that some portion of the record before Judge Gleeson in that case, as well as documents disclosing Judge Gleeson's reasoning in relation to the *Catoggio* issue, assuming it was litigated before him, remain under seal. The Government shall review the sealed portions of the record in Appel, including redacted documents and transcripts, and shall file a letter with the court under seal, by January 20, 2011, identifying the documents which relate to Judge Gleeson's determination to use only victim affidavits in calculating the amount of pecuniary loss caused by Mr. Appel's conduct. At that time the court will take any additional steps that may be necessary after consulting with Judge Gleeson.

## B. Use of Trading Records to Determine Amount of Pecuniary Loss

Even if the court were to find that Catoggio permits the Government to prove the amount of loss attributable to the crime by relying on trading records, the Government's submissions to the court thus far have failed to meet its burden. The Government has not explained to the court its methodology for calculating the amount of pecuniary loss, nor has it provided the court a copy of the trading records on which it purports to rely. Indeed, the Government has not even provided the court with a list of Defendant's victims. Without such information the court cannot readily identify the victims of Defendant's crimes, cannot determine the amount of pecuniary loss suffered by each victim, and cannot determine that the aggregate amount of loss calculated by the Government accurately reflects the "actual loss" suffered by each victim. See United States v. Carboni, 204 F.3d 39, 47 (2d Cir. 2000).

Accordingly, the Government shall file, by January 28, 2011: (1) a memorandum setting forth its methodology for calculating the amount of loss attributable to each victim; (2) for *in camera* review under 18 U.S.C. § 3664(d)(4), a list or spreadsheet identifying the victims of Defendants crimes and the amounts of pecuniary loss attributable to each; and (3) a declaration under 28 U.S.C. § 1746, by someone with knowledge, swearing to the provenance, reliability, and accuracy of the records on which the Government's calculations are based. On January 28, 2011, the Government shall separately provide the court with a courtesy copy of the trading records on which it bases its calculations, in electronic form as a Microsoft Excel spreadsheet, for *in camera* review by the court. The Government may also file with the court any other materials that it believes would be helpful to the court in determining the victims' losses. In any documents publicly filed with the court, the Government shall take steps that may be necessary to protect the privacy of victims' records. See 18 U.S.C. § 3664(d)(4) ("The privacy of any records filed, or testimony heard, pursuant to this section shall be maintained to the greatest extent possible, and such records may be filed or testimony heard in camera.").

Defendant shall file any submission in reply by February 4, 2011. Because the court must enter an order of restitution by February 16, 2011, under 18 U.S.C. § 3664(d)(5), absolutely no extensions of time will be granted.

**[THE PRECEDING PARAGRAPH WAS HELD ERROR BY THE SECOND CIRCUIT, *INFRA*].**

For the above reasons, as well as the attached document previously filed the content of which is requested deemed repeated here as if set forth herein, movant, a CVRA victim of defendant, requests the Court (1) keep sentencing open, (2) order the government to consult with him for determining his CVRA status and, if the government finds he is a victim, determining his loss subject to restitution, the government and movant to file a status report with the Court every 30 days on their progress; or (2) in the alternative to order that any further process shall either be by the government's own initiative but in any event shall not extend past November 17, 2021, by which time absent a further showing of good cause or excusable neglect movant shall have filed a more formal CVRA enforcement motion with this Court as well as any application is for a protective order in respect thereof he may see fit.

October 18, 2021

/s/ Rafafel Cohen, *pro se* (written with the assistance of non-appearing counsel)

345 N. La Brea Ave.,Suite 206 Los Angeles,Ca 90036
Dir # 323-456-1455 Fax # 323-456-455-1456

---

[4] *United States v. Gushlak*, 728 F.3d 184 (CA2 2013)

### A. Failure to Impose Restitution Within 90 Days

*HN4* Section 3664(d)(5) provides that "[i]f the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, . . . the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." The district court violated this provision, Gushlak argues, because although it stated its intention at sentencing to enter a final restitution order within ninety days, it did not actually enter one until well past that deadline. This argument presents a question of law, so our review is *de novo*. *Reifler*, 446 F.3d at 120.

The Supreme Court confronted the statutory deadline at issue here in *Dolan v. United States*, 560 U.S. 605, 130 S. Ct. 2533, 177 L. Ed. 2d 108 (2010). Reasoning in part that *HN5* "the statute seeks speed primarily to help the victims of crime and only secondarily to help the defendant," *id. at 2540*, the court concluded that "a [**14] sentencing court that misses the 90-day deadline nonetheless retains the power to order restitution -- at least where, as here, the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount," *id. at 2537*; *see also United States v. Pickett*, 612 F.3d 147, 149 (2d Cir. 2010) (per curiam) (applying *Dolan*'s rule). On much the same rationale, though viewing the matter through the somewhat different prism of harmless-error analysis, we have declined to reverse a restitution order because of "a district court's failure to determine identifiable victims' losses within ninety days . . . unless [the defendant] can show actual prejudice from the omission." *United States v. Zakhary*, 357 F.3d 186, 191 (2d Cir. 2004); *see United States v. Catoggio*, 326 F.3d 323, 329-30 (2d Cir. 2003) (applying this rule).

These authorities control here. In *Dolan*'s words, the district court "made clear prior to the deadline's expiration that it would order restitution" -- it said so on the record at Gushlak's sentencing hearing, Sentencing Tr., Nov. 18, 2010, at 105, Joint App'x at 2142 -- and "le[ft] open (for more than 90 days) [**15] only the amount," *Dolan*, 130 S. Ct. at 2537; [4] *see also Pickett*, 612 F.3d at 149. And we find implausible Gushlak's assertion that the eighteen-month delay, when tacked on to the decade or so that had elapsed between the conduct that caused the victims' losses and his sentencing, somehow hampered his ability to collect victim information, causing him prejudice. It is without evidentiary support.

We therefore conclude that the district court was authorized to enter the restitution order despite section 3664(d)(4)'s ninety-day requirement.